2007 WY 149

**Robbie HEYWOOD, Appellant (Defendant),**

v.

**THE STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–150.**

Supreme Court of Wyoming.

Sept. 19, 2007.

Representing Appellant: D. Terry Rogers, Interim State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Faculty Director, Prosecution Assistance Program; Geoffrey Gunnerson, Student Director, and Mackenzie Williams and Brian J. Hunter, Student Interns. Argument by Mr. Hunter.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from the appellant's convictions on three counts of second-degree sexual assault. The appellant contends that the district court erred in refusing to give certain lesser-included offense instructions and in failing to answer a question presented by the jury during deliberations. We affirm the district court's decision in regard to the lesser-included offense instructions, but we reverse because of plain error in failing to answer the jury question.

## ISSUES

[¶ 2] 1. Did the district court err in refusing to instruct the jury that third-degree sexual assault and sexual battery are lesser-included offenses to the crime of second-degree sexual assault?

2. Did the district court commit plain error in declining to answer a question presented by the jury during its deliberations asking the court to identify which allegation formed the basis for each of the three separate counts?

## FACTS

[¶ 3] In May 2005, the Laramie County Sheriff's Office received a report that the appellant was sexually abusing his step-daughter (the victim), who was then in the fourth grade. During an interview with law enforcement officers, and in her trial testimony, the victim described an on-going course of sexual abuse by the appellant over the past two years involving countless incidents of vaginal and anal penetration, both digital and penile, as well as fellatio and the use of dildos. The appellant was also interviewed and testified at trial. Although he denied any intentional wrongdoing, he did describe three instances during April and May of 2005 in which digital sexual intrusion could have accidentally occurred with the victim, an incident in which his penis was accidentally exposed to the victim and her sister, and another separate incident in which he found the victim using a dildo.

[¶ 4] The appellant described the first incident where he might have accidentally penetrated the victim as having occurred in a shed. He stated that the victim had removed her pants to ask him a question about her sexual development, and then had sat down on his hand, which was on top of his leg. He was startled by a friend entering the shed, and when he stood up, he may have inserted a finger in her rectum. The second incident occurred in April 2005, when he walked into his bedroom and found the victim with a very large dildo inserted in her vagina. The appellant stated that when he grabbed the dildo to remove it, he may inadvertently have pushed it in further before pulling it out. The appellant further told of a second time when he came upon the victim in the bedroom, this time with a dildo inserted in her rectum. He also told of an occurrence where the family's dog accidentally pulled down the appellant's pajamas, which exposed his penis to the victim and her sister. Finally, the appellant described an incident where he was attempting to remove a sliver from the area between the victim's anus and vagina, or in her upper thigh. He claimed that he must have "hit a nerve" and that one of his fingers may have "gone in."

[¶ 5] An Information was filed charging the appellant with three counts of second-degree sexual assault. The appellant waived a preliminary examination, and the case went to trial on January 9, 2006. The jury found him guilty of all three counts, and the judge sentenced him to three consecutive terms of eight to ten years in prison. Additional facts will be presented as part of the discussion set forth below.

## STATUTES

[¶ 6] To aid in further discussion, we will set out each of the relevant statutes as they

existed at the time of the crimes alleged in this case.[1] The three second-degree sexual assault charges were based upon Wyo. Stat. Ann. § 6–2–303(a)(vi) (LexisNexis 2003):

(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

. . . .

(vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit[.]

[¶ 7] The version of third-degree sexual assault sought as a lesser-included offense by the appellant was found in Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2003):

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

. . . .

(ii) The actor is an adult and subjects a victim under the age of fourteen (14) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim[.]

[¶ 8] The appellant also sought an instruction on sexual battery, as defined in Wyo. Stat. Ann. § 6–2–313(a) (LexisNexis 2003), as a lesser-included offense:

(a) Except under circumstances constituting a violation of W.S. 6–2–302 through 6–2–304, 6–2–502 or 14–3–105, an actor who unlawfully subjects another person to any sexual contact is guilty of sexual battery[.]

[¶ 9] "Sexual contact" and "sexual intrusion" are defined in Wyo. Stat. Ann. § 6–2–301(a) (LexisNexis 2003) as follows:

. . . .

(vi) "Sexual contact" means touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the

clothing covering the immediate area of the victim's or actor's intimate parts;

(vii) "Sexual intrusion" means:

(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably by construed as being for the purposes of sexual arousal, gratification or abuse; or

(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

## DISCUSSION

*Did the district court err in refusing to instruct the jury that third-degree sexual assault and sexual battery are lesser-included offenses to the crime of second-degree sexual assault?*

[¶ 10] After the evidence was presented, the appellant offered two lesser-included offense instructions—third-degree sexual assault and sexual battery—both of which instructions were refused by the district court. Wyoming's law governing lesser-included offense instructions can be summarized as follows. Wyo. Stat. Ann. § 7–11–502 (LexisNexis 2007) and W.R.Cr.P. 31(c) provide that a criminal "defendant may be found guilty of an offense necessarily included in the offense charged[.]" The right recognized by this rule implicates the defendant's right to the due process of law. *Paramo v. State*, 896 P.2d 1342, 1344 (Wyo.1995). A lesser-included offense is "necessarily included" in the greater offense if its elements are a subset of the latter's elements. *Dean v. State*, 2003 WY 128, ¶ 14, 77 P.3d 692, 697 (Wyo.2003). However, the jury must be instructed as to the lesser offense only if there is at least minimal evidence that could cause the jury to convict on the lesser, rather than the greater offense. *Id.* at ¶¶ 18–19, 77 P.3d at 698–99. The failure to give a lesser-included offense instruction in those circumstances constitutes reversible error. *Paramo*, 896 P.2d at 1344. Whether a lesser-

1. The sexual assault statutes were radically amended in 2007.

included offense instruction should be given is a question of law that we review *de novo*. *Dean*, ¶ 12, 77 P.3d at 696.

[¶ 11] We will first consider the third-degree sexual assault statute. For purposes of the present analysis, the date and venue of the offense, and the identity of the perpetrator are not relevant because they are the same in both statutes. Elements found in the greater offense—second-degree sexual assault—but not found in the lesser offense—third-degree sexual assault— also are not relevant, because they do not help to answer the question of whether the elements of the lesser offense are a subset of elements found in the greater offense. Therefore, the only relevant element of the crime of second-degree sexual assault, as charged in this case, is:

1.  The appellant inflicted sexual intrusion upon the victim.

[¶ 12] The relevant elements of the crime of third-degree sexual assault, under the statutory subsection presented by the appellant in his proposed lesser-included offense instruction, are:

1.  The appellant was at least 18 years of age.
2.  The appellant subjected the victim to sexual contact.
3.  The victim was under the age of 14 years.

[¶ 13] The dichotomy between these two statutory subsections leaves little need for further analysis. This version of second-degree sexual assault requires neither that the actor be at least 18 years of age, nor that the victim be under the age of 14 years. The only element of this version of third-degree sexual assault that might be said to be a "subset" of the elements of this version of second-degree sexual assault is sexual contact, *if* that statutory phrase can be seen as necessarily being subsumed in the statutory phrase "sexual intrusion." Given the elements of third-degree sexual assault, as defined in the statute presented for inclusion as a lesser-included offense, third-degree sexual assault is not a lesser-included offense of

second-degree sexual assault, as charged. Consequently, the district court did not err in refusing to give that instruction.

[¶ 14] The next question is whether the crime of sexual battery is a lesser-included offense to the crime of second-degree sexual assault as charged in this case. Once again, a comparison of the relevant elements of the two crimes is necessary. The relevant element of second-degree sexual assault is the same as delineated above. *See supra* ¶ 11. The relevant element of sexual battery is:

1.  The appellant unlawfully subjected the victim to sexual contact.

[¶ 15] One way to pose this question is to ask whether the appellant must have unlawfully subjected the victim to sexual contact in order to inflict sexual intrusion upon her in the manner alleged in the second-degree assault statute. There can be little argument that the words "unlawfully subjects" in the crime of sexual battery, and the words "inflicts" and "submit" in the crime of second-degree sexual assault, both describe conduct by the actor against the will of the victim. Furthermore, the act of touching the intimate parts of the victim, as required for sexual contact, certainly must be accomplished as part of the act of intrusion into the genital or anal opening of the victim's body, as required for sexual intrusion.[2] To that extent, sexual battery appears to be a lesser-included offense of second-degree sexual assault.

[¶ 16] The further question, however, is whether the *mens rea* element of the two statutes is different. Digital intrusion or intrusion with an object such as a dildo is only second-degree sexual assault under Wyo. Stat. Ann. §§ 6–2–303(a)(vi) and 6–2–301(a)(vii)(A) if that "intrusion *can reasonably be construed as being for the purposes of* sexual arousal, gratification or abuse." (Emphasis added.) To the contrary, sexual contact is unlawful under Wyo. Stat. Ann. §§ 6–2–313(a) and 6–2–301(a)(vi) if done "*with the intention of* sexual arousal, gratification or abuse." (Emphasis added.)

2.  The phrase "intimate parts" is defined in Wyo. Stat. Ann. § 6–2–301(a)(ii) as meaning "the external genitalia, perineum, anus or pubes of any person or the breast of a female person."

[¶ 17] We have previously interpreted the emphasized language in the definition of sexual intrusion as *not* creating a specific intent crime, and *not* creating a requirement that the State prove that the actor subjectively intended sexual arousal, gratification, or abuse. *Bryan v. State,* 745 P.2d 905, 908 (Wyo.1987). In other words, second-degree sexual assault, as charged in this case, does not include as an element that the appellant specifically intended sexual arousal, gratification, or abuse.[3] The language of the definition of sexual contact, as noted above, is different. *See supra* ¶ 9. Sexual touching, under that definition, is only made criminal if done "with the intention of sexual arousal, gratification, or abuse." It follows that the State must prove that intention as an element of the crime of sexual battery. *See Bailey v. State,* 764 N.E.2d 728, 730 (Ind.Ct. App.2002). Because the State need not do so to prove second-degree sexual assault as charged in this case, the crime of sexual battery contains an element not contained in second-degree sexual assault, and is, therefore, not a lesser-included offense of that crime. The district court did not err in refusing to give the lesser-included offense instruction.

*Did the district court commit plain error in declining to answer a question presented by the jury during its deliberations asking the court to identify which allegation formed the basis for each of the three separate counts?*

[¶ 18] At some time during its deliberations, the jury apparently sent a note to the judge seeking information about the individual counts of the Information. We say "apparently," because such a handwritten note is in the trial court file, along with what appears to be the judge's typed and signed response. The record does not reflect, however, when or whether the note was sent to the judge, whether it was discussed with counsel and the appellant, how the responsive language was chosen, whether the jury was brought back into the courtroom for

reading of the response, or even whether the response was read to the jury. At any rate, the note found in the record reads as follows:

Are the three counts—

1. In the shed?
2. Use of the sex toys?
3. When removing the splinter?

[¶ 19] The court's apparent response to the jury's question reads as follows:

The Court is unable to further instruct on this. You must rely on your recollection of the evidence and argument and consider the Instructions.

[¶ 20] The parties both contend that the plain error standard of review applies to this issue because the record does not indicate that the appellant objected to the district court's decision not to provide a substantive answer to the jury's question. We recently stated in *Magallanes v. State,* 2006 WY 119, ¶ 18, 142 P.3d 1147, 1152 (Wyo.2006), that plain error review requires the appellant to prove the following:

1. The record is clear as to the alleged error.

2. A clear and unequivocal rule of law was violated in a clear and obvious way.

3. The error adversely affected a substantial right that materially prejudiced the appellant.

[¶ 21] Before we can even determine what standard of review to apply to this issue, we must put the "jury note" in the context of the proceedings as they existed at that time. As mentioned above, the Information charged the appellant with three counts of second-degree sexual assault. *See supra* ¶ 5. All three counts contained the following identical language:

1. On or about April 1, 2005, through May 27, 2005;

2. In the County of Laramie and the State of Wyoming;

3. ROBBIE L. HEYWOOD

4. Did unlawfully inflict sexual intrusion on the victim and the actor was in a posi-

---

3. As we have noted in other cases, it is often more helpful to focus upon intent as a substantive element of a crime, rather than to try to distinguish between specific intent and general

intent crimes. *See Seymore v. State,* 2007 WY 32, ¶ 13, 152 P.3d 401, 405 (Wyo.2007); *Keats v. State,* 2003 WY 19, ¶¶ 10, 13, 64 P.3d 104, 107, 108 (Wyo.2003).

tion of authority over the victim and used this position of authority to cause the victim to submit, to wit: did unlawfully inflict sexual intrusion on [the victim], a female minor, and Robbie L. Heywood was in a position of authority over her and used this position of authority to cause her to submit, in violation of W.S. § 6–2–303(A)(vi), 2003 Lexis, and against the peace and dignity of the State of Wyoming.

[¶ 22] Clearly, the Information utterly fails to distinguish one allegation from another, and does not contain a "plain, concise and definite written statement of the essential facts constituting the offense charged[,]" as required by W.R.Cr.P. 3(b)(2). In innumerable cases, we have examined allegedly deficient charging documents, primarily in the context of the question of whether a defendant was provided sufficient notice of the crime charged to enable him to defend himself. *See, e.g., Barker v. State,* 2006 WY 104, ¶ 29, 141 P.3d 106, 116 (Wyo.2006); *Estrada–Sanchez v. State,* 2003 WY 45, ¶¶ 14–16, 66 P.3d 703, 709 (Wyo.2003); *Baumgartner v. State,* 7 P.3d 912, 916 (Wyo.2000). A second concern is whether the allegation is sufficiently specific so as to protect a defendant from double jeopardy. *See, e.g., Taylor v. State,* 7 P.3d 15, 19 (Wyo.2000); *Vernier v. State,* 909 P.2d 1344, 1350 (Wyo.1996); *Apodaca v. State,* 627 P.2d 1023, 1026 (Wyo.1981). Third, factual specificity allows the judge, upon conviction, to sentence "according to the right of the case." *Gonzales v. State,* 551 P.2d 929, 932 (Wyo.1976).[4] None of these issues were raised below or in this appeal, however, and so they have been waived. *Id.* We mention them primarily as background for analysis of the jury question.

[¶ 23] Not only were these issues not raised below, but the appellant also waived his right to a preliminary examination in circuit court, therefore missing that opportunity to make the allegations more certain. Likewise, the appellant did not seek a bill of particulars for the purpose of making the general allegations more specific. *See Hawkes v. State,* 626 P.2d 1041, 1043 (Wyo.

1981). The appellant's arraignment in district court was equally of no use in that regard, being limited as it was to the following brief colloquy:

THE COURT: Mr. Heywood.

[DEFENSE COUNSEL]: Morning, Your Honor. [Defense Counsel] for Mr. Heywood. He appears here for arraignment. He would be pleading not guilty. We would waive reading of the information.

THE COURT: Good morning, Mr. Heywood. Appears you're here on an information charging you with three counts of sexual assault. Has this information been served on you?

THE DEFENDANT: Yes, sir.

THE COURT: You're fully aware what the charges against you are?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead to those charges?

THE DEFENDANT: Not guilty.

THE COURT: A plea of not guilty is herein entered, trial set for Monday, August 8th.

. . . .

[¶ 24] The next step in these proceedings at which the particular factual basis for each count could have been identified would have been the instruction conference. That conference was not reported, so there is no transcript thereof in the record, but the record does reflect that defense counsel did not object to any of the ten numbered instructions that were read to the jury. Instruction No. 3 was the elements instruction, and it read in pertinent part as follows:

The essential elements of the crime of second degree sexual assault as charged in Count I of the Information, are:

1. On or about April 1, 2005, through May 27, 2005,

2. In Laramie County, Wyoming,

3. The Defendant, Robbie L. Heywood,

4. Inflicted sexual intrusion on [the victim], and

---

4. For general discussions of the need for factual specificity in charging documents, *see* 2 Charles E. Torcia, *Wharton's Criminal Procedure* §§ 237–38, 265 (13th ed.1990); Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* §§ 19.2(b), 19.2(c), 19.2(d), 19.3(b) (2d ed.1999).

5. The Defendant was in a position of authority over the victim, and

6. The Defendant used that position of authority to cause the victim to submit to that sexual intrusion.

This identical language was used for counts II and III. The verdict form, to which there likewise was no objection from defense counsel, read as follows:

We, the jury, duly empaneled and sworn to try the above-entitled cause do find as follows:

1. As to the charge of second degree sexual assault as charged in Count I of the Information, we find the defendant, ROBBIE L. HEYWOOD,

___ Guilty ___      Not Guilty

2. As to the charge of second degree sexual assault as charged in Count II of the Information, we find the defendant, ROBBIE L. HEYWOOD,

___ Guilty      ___ Not Guilty

3. As to the charge of second degree sexual assault as charged in Count III of the Information, we find the defendant, ROBBIE L. HEYWOOD,

___ Guilty      ___ Not Guilty

[¶ 25] This is the procedural context in which the jury, apparently, and not surprisingly, sent a note to the judge asking, in effect, what crime it was to deliberate upon under each of the three counts. Although much of the testimony and argument had focused upon the three incidents that the appellant had described to the investigating officer, and to which both the appellant and that officer had testified, at no time was the jury ever specifically told that those were the three crimes at issue, or that the first count involved the shed incident, the second count involved the "sex toy" incidents, and the third count involved the splinter incident, if that was, indeed, the intent of the Information, the instruction, and the verdict form.

[¶ 26] It is possible, perhaps probable, that the parties knew what particular incidents formed the bases for these allegations. But that is not sufficient. The jury must be adequately instructed to allow it to apply the law to the facts. To determine

whether that happened, we review jury instructions under the following standard:

Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and *the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.*

*Leyva v. State,* 2005 WY 22, ¶ 8, 106 P.3d 873, 876 (Wyo.2005) (quoting *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001)) (emphasis added); *see also Gabbert v. State,* 2006 WY 108, ¶ 11, 141 P.3d 690, 695 (Wyo.2006); *Lopez v. State,* 2006 WY 97, ¶ 14, 139 P.3d 445, 452 (Wyo.2006); *Burkhardt v. State,* 2005 WY 96, ¶ 12, 117 P.3d 1219, 1223 (Wyo.2005). Further:

The trial court's ruling on an instruction must be prejudicial to constitute reversible error. Since the function of jury instructions is to give guidance regarding the applicable law, prejudice results when the instructions confused or misled the jury with respect to the proper principles of law.

*McGuire v. Solis,* 2005 WY 129, ¶ 23, 120 P.3d 1020, 1026 (Wyo.2005).

[¶ 27] This jury question, if that is what it was, facially reflects the jury's confusion. Instruction No. 3 informed the jury that "[e]ach count is a separate charge, and the proof as to each must stand on its own, so you must separately consider and determine what the evidence shows as to each count." It is easy to surmise that, as the jury began its deliberations, it had no idea what the allegation in count I (or count II or count III) was, and therefore asked the judge for guidance. The judge's answer—"I

can't tell you"—was inadequate.[5] Wyo. Stat. Ann. §§ 1–11–209 and 7–11–204 (LexisNexis 2007) clearly permit the judge further to instruct the jury after deliberations have begun when a question arises as to the evidence or the law, and in numerous cases over the years we have addressed the exercise of that discretion. *See, e.g., Carlson v. Carlson,* 888 P.2d 210, 214–15 (Wyo.1995); *In re CH,* 783 P.2d 155, 158 (Wyo.1989); *Johnston v. State,* 747 P.2d 1132, 1133–35 (Wyo.1987); *Hoskins v. State,* 552 P.2d 342, 349 (Wyo.1976).

[¶ 28] Beyond the power to answer such questions is the duty to answer such questions:

> A number of courts have held that if the original instructions are incomplete or if the jury, or any of the individual jurors, express confusion or lack of understanding of a significant element of applicable law, it is the court's duty to give additional instructions. The refusal of a jury's request for an instruction may constitute reversible error.

75A Am.Jur.2d *Trial* § 944 (2007).

[¶ 29] The foregoing principles of law can be summarized for present purposes as follows: (1) instructions that leave doubt as to the circumstances under which the crime was committed are insufficient; (2) instructions that confuse or mislead the jury are insufficient; (3) jury questions revealing confusion or a lack of understanding should be answered. Comparison of a few cases will show how these principles have been applied in jury question cases. In *Rissler & McMurry v. Snodgrass,* 854 P.2d 69, 70–71 (Wyo.1993), we found plain error where the district court failed to follow statutory mandates in answering a jury question, even though the out-of-court procedure it followed was approved by counsel. To the contrary, we affirmed in *Beck v. Townsend,* 2005 WY 84, ¶¶ 14–16, 116 P.3d 465, 472–73 (Wyo. 2005), even though the district court did not follow statutory procedures, on the ground that there was no prejudice because the answer given to the jury's question was the only answer that could be given, and left no

confusion. In *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1187–88 (Wyo.1994), we opined that *Rissler* had not "obviat[ed] the need for the harmless error doctrine," and described the type of error that we considered to be reversible error in the jury question scenario:

> We have searched this record and find no error that, to leave uncorrected, "would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process." [*Abdullah v. Gunter,* 242 Neb. 854, 497 N.W.2d 12, 15 (1993)]; neither are we convinced that the claimed error "possessed a clear capacity to bring about an unjust result." *Gluckauf v. Pine Lake Beach Club, Inc.,* 78 N.J.Super. 8, 187 A.2d 357, 366 (1963).

*Id.* at 1188.

[¶ 30] In light of all we have said above, we conclude that the district court committed prejudicial error in failing to provide a substantive answer to the jury's question in this case, if the paper in the file was, indeed, a jury question. Even without that error, the instructions were inadequate. The fundamental problem is that, contrary to law, we are left in doubt as to the circumstances under which a crime was found to have been committed under any of the three counts. The jury clearly could have been confused as to what the charge was under each count, and the judge apparently did not clear up that confusion. The reason that the jury could have been confused, of course, is the fact that neither the Information, nor the elements instruction, nor the verdict form, was properly drafted. Beyond that, not only is the jury supposed to consider the evidence as it applies to each count, one by one, which was impossible to do in this case, but the judge is to sentence on each count, with the nature of the offense being part of the sentencing consideration. That was also impossible for him to do.

[¶ 31] There was some temptation to affirm the three convictions on the ground that there was sufficient evidence of the shed

---

5. Once again, this discussion is based upon an assumption founded upon documents located in the record. The transcript is barren in regard to the assumed question from the jury and answer from the judge.

incident, the dildo incident, and the sliver incident to justify a finding of guilt beyond a reasonable doubt on each of them. It has to be remembered, however, that there was also evidence of fellatio, and twelve to fourteen incidents of vaginal or anal intrusion during the two-month period charged in the Information. From the record, we do not know for sure what incidents were charged, and we do not know for certain what incidents were found by the jury to have been committed.

■■■ [¶ 32] One last note: we were told by both parties to apply plain error analysis because the record did not reflect that defense counsel had objected to the district court's decision not to give a substantive answer to the jury question. The trouble is that the record does not reflect that defense counsel was ever given an opportunity to object, meaning that plain error analysis may or may not be appropriate. We are mindful of the fact that the appellant bears the burden of bringing to this court a record sufficient for review. *White v. Table Mountain Ranches Owners Ass'n, Inc.,* 2006 WY 2, ¶ 10, 125 P.3d 1019, 1021 (Wyo.2006). The record is fundamental because this Court does not act as a fact finder. *Williams v. Dietz,* 999 P.2d 642, 645 (Wyo.2000). While the present record is inadequate to the extent that the Information, the instructions, and the verdict form are inadequate, and to the extent that it does not reveal whether or not the district court followed mandatory procedures in handling the jury question, we are of the opinion that those inadequacies should be laid at the doorstep of the State and the doorstep of the district court, more so than at the doorstep of the appellant. The obligation to bring a complete record to this Court does not include the obligation to ensure that the State and the district court fulfill their obligations during the prosecution. The problems in this case go far beyond the inadequacy of the appellate record, and it is the obligation of the State and the district court to provide due process of law to a criminal defendant.

## CONCLUSION

[¶ 33] Neither third-degree sexual assault nor sexual battery is a lesser-included of-fense to second-degree sexual assault as proposed in this case. The district court did not err in refusing to instruct the jury as to lesser-included offenses. Reversible error occurred, however, when the district court failed adequately to instruct the jury as to the separate crimes charged and when it apparently failed to provide the jury with a substantive response to its question concerning the charged offenses, because the question reflected obvious and understandable confusion as to how to apply the law to the facts.

[¶ 34] Reversed and remanded to the district court for further proceedings consistent herewith.