2008 WY 35

**Mark Nicholas JAVORINA,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–07–0103.**

Supreme Court of Wyoming.

April 1, 2008.

Representing Appellant: Diane M. Lozano, State Public Defender and Tina N. Kerin, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armi-

tage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] According to the judgment and sentence entered by the district court, Appellant, Mark Javorina (Javorina), was convicted of larceny, under Wyo. Stat. Ann. § 6–3–402(a) and (c)(i) (LexisNexis 2007) and *possession* of stolen property, Wyo. Stat. Ann § 6–3–403(a)(i) (LexisNexis 2007).[1] The judgment and sentence went on to note that the two crimes merged for sentencing and only a single sentence was imposed on the larceny charge, of four to nine years of imprisonment.

█ Actually, Javorina was convicted of larceny and *concealing* stolen property. Javorina does not challenge his conviction for concealing stolen property.[2] The property at issue was a customized Harley–Davidson Fat Boy motorcycle that belonged to Charlie Jones (Jones). Javorina contends that the district court erred in failing to instruct the jury, at Javorina's request, that unauthorized use of a motor vehicle[3] (commonly referred to as joyriding) was a lesser-included offense of the crime of larceny under the circumstances of this case. In addition, Javorina contends that inadmissible victim impact testimony was elicited from Jones and his wife, and that that evidence was argued by the prosecution in closing argument, as though it was a factor pertinent to Javorina's guilt. No contemporaneous objection was made to the testimony or the argument, so those matters may be reviewed only for plain error or fundamental error. We will reverse.

█ Javorina raises these issues:

I. Did the trial court err in refusing to give an instruction on the lesser-included offense of unauthorized use of a motor vehicle?

II. Was irrelevant victim impact testimony impermissibly elicited and argued to the jury by the prosecution?

The State rephrases the issues thus:

I. Is unauthorized use of a vehicle a lesser-included offense of larceny, and did the district court therefore err in refusing to instruct the jury accordingly?

---

1. **§ 6–3–403. Wrongful taking or disposing of property; venue of indictment.**

 (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

 (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more; or

 (ii) Repealed by Laws 1984, ch. 44, § 3.

 (iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than one thousand dollars ($1,000.00).

 (b) A person may be indicted under this section in the county where he received or possessed the property, notwithstanding the wrongful taking occurred in another county.

2. The evidence of "concealment" was, at best, slight, although Wyoming law as interpreted by this Court, and the instructions given at trial, are quite generous to the State, in this regard. *Garcia v. State*, 777 P.2d 1091, 1095 (Wyo.1989); compare 8A *Words and Phrases*, "conceal," pp. 27–31 (2005). However, because we reverse and remand with instructions that Javorina be ac-

corded a lesser-included offense instruction on "joyriding," the vitality of the concealment conviction may have to be revisited in light of the legislative intent at work in this set of crimes, as well as the applicability of constitutional due process and equal protection standards. The crime of concealment does not require a "larceny," but only that the property be obtained in violation of law. In the instant circumstances, "concealing" the property that was the subject of the taking without authority, if perchance that is the jury's verdict, would then be a far more serious crime than the taking itself.

3. **§ 31–11–102. Unauthorized use of vehicle; penalty.**

 Any person who without specific authority of the owner or his authorized and accredited agent willfully, wantonly, or maliciously takes possession of, or drives, propels or takes away, or attempts to take possession of, drive, propel, or take away a vehicle, the property of another, for the purpose of temporarily making use of the vehicle, or who knowingly aids, abets or assists another in so doing, upon conviction, is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.

II. Was the victim impact testimony and argument admitted during [Javorina's] trial irrelevant and, if so, was such prejudicial?

## FACTS AND PROCEEDINGS

[¶ 4] By information filed in the district court on September 23, 2005, Javorina was charged with the larceny of a $13,000 Harley–Davidson motorcycle, as well as concealing stolen property (the same motorcycle at issue in this case). A trial was held on May 30 and 31, 2006. An Order Upon Verdict of Guilt was entered on June 15, 2006. Javorina's defense attorney sought to withdraw on July 3, 2006, and by order entered on July 25, 2006, that motion was granted and Javorina was allowed to proceed pro se. On July 27, 2006, the district court found it necessary to appoint a new attorney to represent Javorina. By order entered on August 17, 2006, the proceedings were suspended pending an evaluation of whether Javorina was fit to proceed to sentencing. A hearing was held on that matter on February 5, 2007, and on February 7, 2007, Javorina was determined to be competent to proceed to sentencing. Judgment and Sentence were entered on March 12, 2007, as was Javorina's Notice of Appeal.

[¶ 5] The central issue in this case is whether Javorina was entitled to a lesser-included offense instruction. For this reason, we set out the facts in somewhat more detail than we might otherwise, because the applicable standard of review requires us to do so:

> A lesser-included offense is "necessarily included" in the greater offense if its elements are a subset of the latter's elements. *Dean v. State*, 2003 WY 128, ¶ 14, 77 P.3d 692, 697 (Wyo.2003). However, the jury must be instructed as to the lesser offense only if there is at least minimal evidence that could cause the jury to convict on the lesser, rather than the greater offense. *Id.* at ¶¶ 18–19, 77 P.3d at 698–99. The failure to give a lesser-included offense instruction in those circumstances constitutes reversible error. *Paramo*, 896 P.2d at 1344. Whether a lesser-included offense instruction should be given is a question of law that we review *de novo*. *Dean*, ¶ 12, 77 P.3d at 696.

*Heywood v. State*, 2007 WY 149, ¶ 10, 170 P.3d 1227, 1230–31 (Wyo.2007).

[¶ 6] On the evening of August 9, 2005, Jones was living at the Days Inn Motel. Mr. Jones's wife was the manager of that motel. Jones was trying to sell his motorcycle and had a "for sale" sign on it, using the motel phone number for contact purposes. The secondary issue in this case arose out of the reason Jones wanted to sell the motorcycle. Those facts showed that Jones did not so much *want* to sell it, as that it became *necessary* because his health was steadily deteriorating due to multiple sclerosis. It was the prosecution's elicitation of testimony with regard to Mr. Jones's health, and the sentimental attachment he had to the motorcycle, that created the second issue Javorina includes in this appeal.

[¶ 7] Javorina showed up at the motel and expressed an interest in buying the motorcycle and that he wanted to buy it so that he could take it to Sturgis, South Dakota, and try to sell it there. Jones was readily able to identify the motorcycle as his when it was returned to him because it was, in several respects, a custom bike. Jones allowed Javorina to test drive the motorcycle, but limited that permission to the K–Mart parking lot and the motel parking lot. It was late evening and dark was approaching. Jones did not have Javorina's name, phone number, or any other information. Jones waited between 15 and 45 minutes to report the motorcycle as stolen, at which time it was 9:19 p.m. The investigating police officer did not enter the motorcycle as stolen with NCIC until 3:00 a.m., because he held out hope that it would be returned. The investigating officer viewed the situation as one where it was "an authorized possession with a limit on it." When the undamaged motorcycle was found the next morning, there was no indication that there had been an attempt to obscure the vehicle identification number or remove the license plates from the motorcycle. Javorina and the motorcycle were found in plain view in the parking lot at Flagg Ranch.

[¶ 8] An employee of the Days Inn Motel was apparently the first to speak with Javori-

na when he arrived there, and he described Javorina as "nervous" and "jittery." He also described Javorina as smelling as though "... he had been drinking because it was like very, very strong. Honestly it kind of burned my eyes, that's how strong it was. I was—I never really been around someone that I have smelled—I almost—it was almost so strong that I could taste it in my mouth." The employee further reported that Javorina talked a lot, including talking to himself a lot. This same employee also reported that when Javorina did not return within fifteen minutes, there initially was some concern that the motorcycle might have broken down, because that had happened on a previous occasion when another individual test drove the motorcycle.

[¶ 9] The next witness called was Jones's wife, Jennifer. Her testimony is important for two reasons. First, because Javorina contends in this appeal that she was permitted to give "victim impact" testimony during the trial phase of the case. The gist of that testimony was to the effect that her husband loved his motorcycle and it was a crushing blow to him to have it stolen, especially given that the progression of his health problems had necessitated him having to sell the motorcycle. The defense did not object to this testimony. In addition, her testimony revealed that although Javorina's given name is Mark, Mrs. Jones said he gave her the name "Jeff" (suggesting use of an alias). However, later testimony revealed that Javorina went by the nickname "Jav." Mrs. Jones expressed having considerable knowledge of persons who are intoxicated by alcohol, but testified that in her view, Javorina did not appear to have been drinking at all, but rather just "maybe nervous, maybe high strung." [4]

[¶ 10] Mr. Jones testified and indicated that he did not know Javorina, although Javorina claimed they were old drinking buddies. Jones did not perceive Javorina to be intoxicated. He gave Javorina permission to test drive the motorcycle only in the immediate area of the motel and adjoining K-Mart parking lot.

4. The record is replete with information concerning Javorina's profound mental illness and his struggles with schizophrenia and alcohol abuse.

[¶ 11] A Jackson police officer testified that Javorina was found at the Flagg Ranch near Jackson, within Teton County, during the morning of August 10, 2005. Flagg Ranch is situated on the John D. Rockefeller Parkway in Grand Teton National Park. The distance from the scene of the theft to Flagg Ranch is not given in the record; however, we take note that it is about 44.9 miles north of Jackson (see http://www.flaggranch.com/contact.html). That police officer also related that he had access to Javorina's conversations with visitors while he was briefly incarcerated in the Park. On August 14, 2005, the officer overheard Javorina telling his roommate "words to the effect" that he had been drinking, and that he always gets in trouble and does not remember what he is doing when he drinks, and that he just wanted to ride the motorcycle through the Park.

[¶ 12] A park ranger related the circumstances leading up to his locating Javorina at Flagg Ranch and the arrest. Javorina was drinking beer and visiting with other bikers. He had no luggage, toothbrush, or any other property indicating that he was taking a trip, only the beer. The park ranger charged him with driving under the influence of alcohol.

[¶ 13] Javorina requested the trial court to give a lesser-included offense instruction. The court declined to do so.

[¶ 14] We have not had occasion to speak directly to this lesser-included offense issue. However, we have held that joyriding is not a lesser-included offense of concealing stolen property. *DeLeon v. State*, 896 P.2d 764, 767–68 (Wyo.1995) (Although it is, of course, only dicta, our discussion in *DeLeon* intimated that joyriding was a lesser-included offense of larceny.).

## DISCUSSION

### Lesser–Included Offense of Joyriding

[¶ 15] The elements of larceny are set out in W.Cr.P.J.I. § 34.02A (2004), Larceny—Stealing, Taking and Carrying Away.

Indeed, it was this factor that created the long delay between trial and sentencing.

The elements of the crime of Larceny, as charged in this case, are:

1. On or about the ____ day of _____, 20____

2. In _____ County, Wyoming

3. The Defendant, _____

4. Stole, took and carried, led or drove away

5. Property of another [of the value of $1,000.00 or more]

6. With intent to deprive the owner or lawful possessor.

[¶ 16] Of great importance here, that instruction is necessarily supplemented by the meaning of the word "deprive," as used in the governing statute (see W.Cr.P.J.I. § 34.01 (2004)):

"Deprive" means:

(A) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

(B) To dispose of the property so as to make it unlikely that the owner will recover it.

[¶ 17] The elements of the asserted lesser-included offense are found at § 125.02 W.Cr.P.J.I. (2004):

The elements of the crime of Unauthorized Use of Vehicle, as charged in this case, are:

1. On or about the ____ day of _____, 20____

2. In _____ County, Wyoming

3. The Defendant, _____

4. [{Wilfully} {Wantonly} {Maliciously}] [ ({took possession of} {drove} {propelled} {took away}) (attempted to {take possession of} {drive} {propel} {take away}) ] a vehicle which was the property of another

5. Without the specific authority of the owner or the owner's authorized and accredited agent

6. For the purpose of temporarily making use of the vehicle.

[¶ 18] We have already set out the applicable standard of review. This issue is thoroughly annotated at David A. Gerregano, Annotation, *Joyriding or Similar Charge as Lesser–Included Offense of Larceny or Similar Charge,* 78 A.L.R.5th 567 (2000 and Supp. 2007). We note that the appellate courts of the various states have reached varying conclusions about this question, depending upon the wording of statutes and the facts of the case at hand. It is generally recognized that the feature that distinguishes the two crimes is the nature of the evidence relating to whether or not the deprivation of the property was done with the intent to permanently deprive the owner of the vehicle, or to only temporarily deprive the owner of the vehicle. It is interesting to note that many of the cases have been brought by defendants who were denied the instruction, and others were brought by defendants in cases where the instruction was given, at the request of the prosecution, but over the defendant's objection. For example, it was held that a defendant who murdered the woman whose car he stole was not entitled to such an instruction. *People v. Moon,* 37 Cal.4th 1, 32 Cal.Rptr.3d 894, 117 P.3d 591 (2005). In *State v. Griest,* 196 Ariz. 213, 994 P.2d 1028, 1028–29 (App. Div. 1 2000), a defendant was convicted of joyriding, even though he was charged only with theft by conversion (a more serious crime). The owner of the vehicle gave the defendant possession of his van for the limited purpose of jump starting a neighbor's car. The owner lived in Yavapai County, Arizona. The defendant drove off in a direction inconsistent with the defendant's requested use of the van, so the owner reported it stolen. The defendant was arrested "several hours" later in Prescott, which is also in Yavapai County.

[¶ 19] After carefully reviewing the facts of this case, and being persuaded by the better-reasoned cases included in the above-cited annotation, we conclude that, upon the defendant's request, the district court was required to give the instruction because: (1) Its elements are a subset of the greater crime's elements; and (2) there is at least minimal evidence that could cause the jury to convict on the lesser, rather than the greater,

offense. The failure to give the lesser-in-cluded offense instruction here constitutes reversible error. Having examined the applicable statutes, as well as the evidence presented at trial, we conclude that, as a matter law, the lesser-included offense instruction was required to be given.

### Victim Impact Testimony

 [¶ 20] Our decision in *Justice v. State*, 775 P.2d 1002, 1010–11 (Wyo.1989) very clearly applies to the circumstances of this case:

It is clear that the testimony offered by the victims of this crime with respect to how it affected them in connection with their lives after the crime is absolutely irrelevant with respect to the issues before the jury. Their discussion of the impact of the crime upon them could not in any way serve to establish any of the elements of the crime of aggravated robbery. The only purpose must have been to attempt to arouse the passions of the jury. Consequently, we are satisfied that the admission of such evidence is error, and the trial courts are cautioned not to permit such evidence to be presented unless there is a clear justification of relevance. In the context of this case, however, we are persuaded that such evidence was harmless. Given the other evidence against Justice, which the trial court aptly described as overwhelming, the admission of the testimony about the impact on the victims did not constitute prejudicial error. See *Hyde v. State*, 769 P.2d 376 (Wyo.1989); *Ortega v. State*, 669 P.2d 935 (Wyo.1983).

Also see *Whitney v. State*, 2004 WY 118, ¶¶ 89–91, 99 P.3d 457, 487–88 (Wyo.2004).

 [¶ 21] Because no contemporaneous objections were made, either when the offending questions were asked and answered, or during closing argument, we must apply the plain error standard. Under that standard, the record first must clearly present the incident alleged to be error. Second, a defendant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, the defendant must prove that he was denied a substantial right resulting in material prejudice to him. *Lopez v. State*, 2006 WY 97, ¶ 18, 139 P.3d 445, 452–53 (Wyo.2006). Here, the first two prongs are clearly met; however, just as clearly, Javorina has failed to present cogent argument or to cite pertinent authority that convinces us that he was denied a substantial right resulting in material prejudice to him. While Mr. Jones's medical condition and his sentimental attachment to the motorcycle were not relevant,[5] as that term is understood in the law of evidence and as it applies in the context of criminal trials, the evidence was not so conspicuous or inflammatory as to call into question the validity of the jury's verdict.

 [¶ 22] However, we do think a brief postscript on this issue is in order. In a spirit of generosity, we will assume that in these circumstances the questions asked, and the argument made, found their origin in ignorance of the law, rather than a malicious intent to inflame the jury. However, such situations do put a defendant in a difficult spot. In order to preserve the error, the defendant must object to the victim's tale of woe, and perhaps incur disfavor with the jury in the process. Such strategic burdens should not have to be borne entirely by the defendant. A district court should respond to such incidents sua sponte if need be or, upon request, permit a defendant to make the necessary objection outside the hearing of the jury. In most, if not all, cases the ruling sustaining the objection should include an admonition to the jury that the State knows such evidence is not relevant, and the jury must not handicap the defendant for having required the State to keep its presentation of evidence within the bounds of the governing law.

### CONCLUSION

[¶ 23] With respect to the conviction for larceny, the judgment and sentence of the district court are reversed, and this matter is

---

5. W.R.E. 401 provides: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

remanded to the district court for further proceedings consistent with this opinion, including amending the judgment and sentence to accurately reflect Javorina's conviction for concealing stolen property, rather than possession of stolen property.

BURKE, J., files a special concurrence.

BURKE, Justice, specially concurring.

[¶ 24] I concur in the result reached by the majority, but write separately because I view the victim impact evidence differently than the majority.

[¶ 25] Victim impact evidence, by definition, is evidence concerning the impact that the crime has had on the victim after the crime has occurred. The crime involved is larceny. Victim impact evidence in the context of this case would be evidence establishing the effect of the theft of the motorcycle on Mr. Jones. From my review, there is very little, if any, evidence of that nature in the record. The majority accurately points out that there was a great deal of evidence regarding Mr. Jones's health problems and sentimental attachment to his motorcycle. Viewed in context, however, that evidence is not victim impact evidence because it was relevant to explain why Mr. Jones limited his test drive permission to the confines of the K–Mart parking lot, and why he reported the loss of the vehicle within such a short time after its disappearance. Additionally, because the VIN on the vehicle did not match the number on the title, it was also relevant to bolster Mr. Jones's credibility regarding his identification of the vehicle when it was returned by the police. The relevance of this evidence is capsulized in this exchange between the prosecutor and Mrs. Jones, as referenced in the majority opinion:

Q. [Prosecutor]: Okay. So he kept it for two years when he couldn't ride it; is that right?

A. Right.

Q. When he was unable to ride it?

A. Yeah, he would go out every day polishing it, wiping down the bike. It was like his baby, it got more attention than me.

Q. All right. So did you feel that was something important in his life then?

A. Oh, yeah.

Q. Now—

A. It gave him something to look forward to. His disease paralyzed him just overnight, but that bike was like a hope for him, yeah.

Q. *So would you think he spent enough time to be able to recognize that bike pretty well?*

A. *Oh, yeah. I'm sure he would.*

(Emphasis added.) This testimony was not victim impact testimony.

[¶ 26] Nevertheless, it is obvious from review of the entire record that the prosecutor treated this evidence as victim impact evidence. Victim impact evidence is improper because it is intended to "arouse the passions of the jury." *Justice v. State*, 775 P.2d 1002, 1010 (Wyo.1989). There is little doubt that the prosecutor intentionally emphasized Mr. Jones's physical condition and love of his motorcycle in an attempt to appeal to the jury's emotions. The prosecutor devoted a substantial portion of his relatively short closing argument to Mr. Jones's health condition and sentimental attachment to his motorcycle and never once attempted to tie those factors to any relevant issue in the trial. In closing, the prosecutor stated:

Ladies and gentlemen of the jury. You know, sometimes I struggle with this, I am not an actor and I don't bring up—I don't know when emotion is coming or not, so I apologize.

But you sat here yesterday with me and you heard Charlie Jones talk about that bike, talk about how it takes four or five hours to clean a Harley because you've got to—you've got to talk to a Harley first and you've got to approach it right. And, you know, you'd thought he was talking about his wife, she was kind of jealous of the Harley, you know, she said that.

The man spent his whole life working on big motors, big diesels, big generators and his hobby was the big bike, it's not a diesel but it about sounds like one. And then after spending a lifetime doing that he

retired, as we all hope to do, and he wanted to enjoy his bike.

Shortly after retirement life took a turn on him and he wasn't able to enjoy the bike the way he wanted to. He could still go out and he could clean it, he could polish it. It's amazing to me that the guy spent four to five hours twice a week polishing that bike right there when nobody had ridden it since the last time he polished it, hadn't been anywhere. It was just sitting there, but he still spen[t] the time with his bike.

It's hard to imagine what it would be like to be bound to a wheelchair, but you would want to have some hope, hope for mobility, hope for freedom, hope for, you know, the dignity and the pride that you had when you owned your own business, drove your own Harley and people didn't have to do everything for you.

. . .

That bike meant a lot to Charlie Jones and then one day that man right there walked in and lied to him about who he was, lied to him about where he lived, lied to him about what he intended to do with the bike. Just a little test drive and he took it, he took Charlie's pride, took his baby.

. . .

Now [defense counsel] is going to have his turn to speak and then I'll get one more chance at rebuttal, but before I sit down I just want to ask you to think about Charlie Jones, the testimony he gave yesterday, and take a good look at Mark Javorina and think about what he did to Charlie Jones.

[¶ 27] I can conceive of no proper basis for these arguments. I am not willing, as the majority did, to excuse this conduct on the basis that these comments "found their origin in ignorance of the law." I am also unwilling to find these comments harmless. The comments were not isolated. They made up approximately 40 percent of the prosecutor's closing argument. The prosecutor emphasized Mr. Jones's medical condition and attachment to his motorcycle throughout the trial. The record reveals a concerted effort to focus the jury's attention on Mr. Jones's medical condition. In short, the prosecutor attempted to use sympathy for the victim as a basis for the jury's decision. Such conduct should be condemned, not ignored as harmless.

[¶ 28] The perplexing aspect of this issue is that there was no apparent need for the prosecutor to resort to these tactics. The case against Mr. Javorina was strong. Indeed, it is the strength of the case that allows the majority to find the error harmless. However, the pervasiveness of this evidence, so blatantly emphasized in the prosecutor's closing arguments, leads me to the inescapable conclusion that Mr. Javorina was denied his fundamental right to a fair trial. This evidence taints the entire trial and justifies a reversal of the larceny conviction. Additionally, although the "concealment" conviction is technically not before us, in light of the reversal of the larceny conviction and the unusual procedural posture of this case,[6] I would grant a new trial on all counts.

---

**6.** Mr. Javorina was found guilty by the jury on both counts, but the district court has not entered the concealment conviction, and has not sentenced Mr. Javorina on the concealment charge.