2001 WY 109

**Troy OGDEN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 00–4.**

Supreme Court of Wyoming.

Nov. 8, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Diane Courselle, Director, Wyoming Defender Aid Program; and Caroline Aeed, Barbara Swatt, and Melinda Godwin, Student Interns. Argument by Ms. Godwin.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Elana Sears, Student Intern. Argument by Ms. Sears.

Before LEHMAN, C.J., and GOLDEN, HILL and KITE, JJ.

LEHMAN, Chief Justice.

[¶1] Appellant Troy Ogden appeals from the judgment and sentence that was entered after a jury found him guilty of aggravated assault.

[¶2] We affirm.

## ISSUES

[I.] Did [the] trial court commit fundamental [error] when it allowed the jury to infer that the defendant's driving act, alone, could demonstrate intent to cause bodily injury to another person, when Mr. Ogden was charged only with attempting to cause bodily injury with a deadly weapon?

[II.] Did the trial court err when it permitted the prosecution to elicit opinions from the State's witnesses about Mr. Ogden's intent to commit aggravated assault and about other witnesses' credibility?

## FACTS

[¶3] Ogden and his girlfriend were driving south on a street in Casper, on the afternoon of November 25, 1998, when they happened upon the victim who was walking north on the east side of the street. The victim and Ogden's girlfriend had been romantically involved but had broken up and, after several unpleasant encounters, had a mutual order of protection put in place. Not surprisingly, the burgeoning relationship between Ogden and his girlfriend had also created tension between Ogden and the victim.

[¶4] Testimony conflicts as to whether or not the victim threw a rock at Ogden's car and/or made an obscene hand gesture towards him; but, for whatever reason, Ogden turned his car around and drove up behind the victim, stopping his car partly on the sidewalk. Ogden exited his car, and the two traded comments while engaging in some shoving and chest butting.

[¶5] Ogden got back into his car. Again accounts differ as to why, but the car lunged toward the victim. To avoid being hit by the car, the victim "jumped straight up in the air and landed right on the hood" of the car. As the victim got off of the car, he called across the street to some teenaged boys who had been skateboarding to find out whether any of them had witnessed what had just happened. Ogden drove away, but the victim and the boys proceeded to a nearby telephone where they called the police.

[¶6] Ogden was arrested and charged with simple assault and aggravated assault with a deadly weapon. The State later dismissed the simple assault charge, but Ogden went to trial on the aggravated assault charge. The jury found Ogden guilty of the offense, and the trial court sentenced him to serve a term in the Wyoming State Penitentiary of no less than four nor more than six years. The prison sentence was suspended on the condition that Ogden successfully complete three years of supervised proba-

tion. Ogden appeals his conviction to this court.

## DISCUSSION

### A. Jury Instruction

[¶ 7] In Ogden's first claim of error, he asserts that the trial court committed fundamental error by giving Instruction 14, which informed the jury that it could infer intent to cause bodily injury if it found Ogden knowingly drove his vehicle directly at the victim. He also complains that Instruction 14 conflicted with Instruction 10, which confused and misled the jury. The State replies that the instructions were neither contradictory nor confusing and that prior precedent allows the jury to infer intent under these circumstances.

[¶ 8] We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Vigil v. State*, 859 P.2d 659, 663 (Wyo.1993). We give trial courts great latitude in instructing juries and "will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997).

[¶ 9] Ogden did not object to the challenged instruction at trial. We, therefore, review Ogden's claim under our three-part plain error standard:

First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*CB v. State*, 749 P.2d 267, 268–69 (Wyo.1988); *see also Pearson v. State*, 12 P.3d 686, 690 (Wyo.2000).

[¶ 10] The first prong of the plain error standard is met because Instruction 14 is clearly spelled out in the record. That instruction read:

If you find that the Defendant knowingly drove his vehicle directly at another

person, you may infer from that action that the Defendant intended to cause bodily injury to that person.

You are to consider this with all other evidence in determining whether the Defendant intended to cause bodily injury to another person.

[¶ 11] We next analyze whether a clear and unequivocal rule of law was violated in a clear and obvious way. Ogden claims that allowing the jury to infer intent if it found Ogden knowingly drove his car at the victim undermines the crime's specific intent element. Relying on *Fuller v. State*, 568 P.2d 900, 904 (Wyo.1977), Ogden argues that a presumption that a defendant intended the natural and probable consequences of his actions cannot be used to prove specific intent. The State agrees that presumptions cannot be used to prove the specific intent element of a crime, but contends that this instruction did not include a presumption, insisting that the portion of the instruction Ogden challenges is a permissive inference.

[¶ 12] Ogden is correct that this court has held that an instruction cannot include a "presumption that the defendant intended the natural and probable consequences of his act ... to prove a specific, unaccomplished intent to injure the person of another." *Fuller*, 568 P.2d at 904. We do, however, allow juries to be instructed on reasonable inferences they may make regarding the intent of the defendant even when dealing with specific intent crimes. *Schiefer v. State*, 774 P.2d 133, 135 (Wyo. 1989).

[¶ 13] The United States Supreme Court has defined the relevant inquiry:

The court must determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

... [Mandatory presumptions] violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense.... A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved.... A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.

*Francis v. Franklin,* 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985) (citations and footnotes omitted).

[¶ 14] *Barron's Law Dictionary* 231 (2nd ed.1984) defines the term inference in the following way:

**INFERENCE** a deduction from the facts given, which is usually less than certain but which may be sufficient to support a finding of fact; "a process of reasoning by which a fact or proposition sought to be established ... is deducted as a logical consequence from other facts, or a state of facts, already proved or admitted.... It has also been defined as 'a deduction of an ultimate fact from other proved facts, which proved facts, by virtue of the common experience of man, will support but not compel such deductions.' " 199 Pa.Super. 631, 186 A.2d 632, 633. Compare **presumption.**

*Barron's Law Dictionary* 359–60 (2nd ed.1984) defines the term presumption as:

**PRESUMPTION** a rule of law which requires the assumption of a fact from another fact or set of facts. The term "presumption" indicates that certain weight is accorded by law to a given evidentiary fact, which weight is heavy enough to require the production of further evidence to overcome the assumption thereby established. It thus constitutes a rule of evidence which has the effect of shifting either the **burden of proof** or the burden of producing evidence. Compare **inference.**

[¶ 15] Ogden makes a leap in logic when he equates a presumption with a permissive inference. Our rule against using presumptions to prove specific intent does not translate into a rule against instructing juries about reasonable, permissible inferences that they may draw from the facts proved during the trial. "The mind of an alleged offender may be read from his acts, his conduct, his words and the reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring a finding of specific intent." *Schiefer,* 774 P.2d at 135.

[¶ 16] Furthermore, Ogden's theory of the case focused on his assertion that he had accidentally or mistakenly driven toward the victim. The jury instructions covered this theory and informed the jurors that if they found that Ogden had mistakenly or accidentally driven toward the victim, then they should find Ogden not guilty. Although the jurors rejected this theory in favor of the conclusion that Ogden had intentionally driven toward the victim, they had been advised of their option to conclude that Ogden did not act intentionally.

[¶ 17] We conclude that Instruction 14 was not a violation of a clear and unequivocal rule of law because it did not require the jury to find certain facts or to come to a specific conclusion regarding Ogden's state of mind. Instead it merely informed the jurors that they were at liberty to make such an inference if they felt the evidence merited it.

[¶ 18] Ogden also argues that the intent element in Instruction 14 directly conflicted with the intent element in Instruction 10, making the instructions as a whole confusing and misleading. He claims that Instruction 10 correctly allowed the jury to consider the fact that his car stopped before the victim was injured while Instruction 14 did not. Instruction 10 provided:

"Attempt" requires the intent to commit a crime, and is defined as the commission of any act which is a substantial step towards commission of the crime of Aggravated Assault. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission [of] the crime.

[¶ 19] We disagree that the instructions conflicted with one another. Neither instruction specifically addressed the fact that the vehicle stopped. Instructions are to be read together, and when we do that, we conclude that the instructions correctly stated the law and adequately addressed the issues.

### B. Opinion & Credibility Testimony

[¶ 20] In Ogden's next point of error, he asserts that the prosecutor elicited improper opinion testimony from the young skateboarders that Ogden intentionally drove toward the victim and would have injured him had the victim not jumped onto the car. Ogden also complains that the detective improperly vouched for the boys' credibility. The plain error standard of review set out in our discussion of the first issue applies here as well given that the defense did not object to any of the challenged testimony.

[¶ 21] This court has consistently held that it is the jury's function to resolve the factual issues, determine the credibility of the witnesses, and decide the guilt or innocence of a criminal defendant. *Huff v. State*, 992 P.2d 1071, 1079 (Wyo.1999). This is because jurors are deemed to be experts in determining the credibility of the witnesses. *Stephens v. State*, 774 P.2d 60, 68 (Wyo.1989).

Two rules flow from the Wyoming cases that have addressed th[ese] issue[s]. First, the prosecution may not elicit opinion testimony from a witness, lay or expert, concerning the guilt of the accused. *Bennett v. State*, 794 P.2d 879, 881 (Wyo. 1990); *Stephens [v. State ]*, 774 P.2d [60,] 66 [ (Wyo.1989) ]. Second, the prosecution may not elicit an expert witness' opinion with regard to another witness' credibility. *Stephens*, 774 P.2d at 68. These rules ensure that it is the jury which resolves the factual issues, judges the credibility of the witnesses, and ultimately determines the guilt or innocence of the accused. *Wells v. State*, 846 P.2d 589, 596 (Wyo. 1992), *denial of habeas corpus aff'd*, 37 F.3d 1510 (10th Cir.1994).

*Gayler v. State*, 957 P.2d 855, 860 (Wyo. 1998). Our review of our case law on this issue, however, has reminded us that we must carefully analyze the testimony to determine whether a given comment by one witness actually vouched for another witness' credibility or commented on the defendant's guilt. *Huff*, 992 P.2d at 1079; *see Gayler*, 957 P.2d at 860 and *Brown v. State*, 953 P.2d 1170, 1182 (Wyo.1998) (for cases where this court did carefully analyze the challenged testimony).

[¶ 22] The challenged exchanges between the prosecutor and the young witnesses are clearly set out in the record. Ogden first complains about the boys' testimony that it appeared to them that Ogden had intentionally tried to hit the victim with his car:

Witness # 1

Q. Okay. When the man went down the sidewalk—or the car went down the sidewalk—did it appear to be an accident that it was going down there?

A. No.

Q. Did it appear to be intentional and directed towards the person that was walking?

A. Yeah.

Witness # 2

Q. Okay. When you were watching the car almost hit the man that was walking, did it appear to you that it was an accident when they were going down the sidewalk?

A. No.

Q. Did it appear that they were intentionally accelerating towards that man?

A. Yeah, it did.

Witness # 3

Q. Okay. Did it appear to you, when you were watching this, that that car went intentionally towards [the victim]?

A. Yeah, it did.

Q. Did it seem like it was an accident?

A. No.

Witness # 4

Q. And I have asked these questions a lot, so bear with me if I repeat myself. When the car was going down the sidewalk, was it driven directly towards the man that was on the sidewalk?

A. Yes, it was.

Q. Did it look like it was an accident?

A. No.

Ogden also challenges the testimony about whether the witnesses believed that he was attempting to injure the victim:

Witness # 1

Q. . . . [W]hat do you think would have happened if [the victim] hadn't jumped up when he did?

A. It probably would have hit him in the legs and like made him fall on to the hood.

Witness # 2

Q. What did you think would have happened if that man walking hadn't jumped before that car hit him?

A. They probably would have hit him.

Q. They would have hit him. Thank you.

 [¶ 23] Testimony that is otherwise admissible will not be excluded unless it constitutes an actual conclusion about the guilt or innocence of the accused party. *Saldana v. State,* 846 P.2d 604, 616 (Wyo.1993). "An interpretation of the evidence by a witness, even though that interpretation may be important in establishing an element of the crime and thus leading to the inference of guilt, is not in the same category as an actual conclusional statement on the guilt or innocence of the accused party." 846 P.2d at 616.

[¶ 24] Ogden premises his challenge to the boys' testimony on this court's decision in *Whiteplume v. State,* 841 P.2d 1332, 1344 (Wyo.1992), where we held that a law enforcement officer's testimony that "I listened to her story and made a determination that she had been raped" constituted reversible error as an improper conclusion of law and thereby improper opinion on Whiteplume's guilt.

[¶ 25] We conclude that the boys' statements do not rise to the same level of impropriety that our *Whiteplume* opinion guards against. In *Whiteplume,* the officer's statement informed the jury specifically that he thought the victim was credible and the defendant was guilty of raping her. 841 P.2d at 1340. To further exacerbate the officer's statements was the fact that they came from an officer of the law who is presumed to know the elements of the various criminal

laws and whether a particular activity qualifies as a violation of one or more of those laws.

 [¶ 26] Additionally, as the State points out, the testimony at issue is supported by Wyoming Rules of Evidence 602 and 701, which in essence provide that so long as sufficient evidence exists to show that the witness has personal knowledge of the matter, a nonexpert witness may testify in the form of opinions or inferences that are rationally based on the perceptions of the witness and are helpful to the fact finder. W.R.E. 602, 701. Moreover, W.R.E. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

[¶ 27] The young witnesses all had personal knowledge about the incident, and they testified regarding their perceptions of what occurred. Their testimony was rationally based on their observations of the incident, helpful to the jury, and did not amount to conclusory statements about Ogden's guilt. A clear and unequivocal rule of law was therefore not violated.

 [¶ 28] Ogden also complains that the State improperly elicited the detective's opinion that the teenagers were credible and reliable. Specifically, Ogden challenges the detective's statement that "all the boys had very good detail. It was obvious to me they were focused on the event." He is also troubled about the following exchange:

Q. And was [the victim], I guess, as coherent and detailed as the boys were?

A. Yes, he was.

Q. And did you find his statement also to be consistent with the boys' statements?

A. Yes, I did.

Q. Was there anything that led you to believe that [the victim] had told the boys what to say?

A. No.

He further complains that the following testimony suggested that the detective believed the boys and that Ogden was, indeed, guilty:

Q. . . . [Y]ou had said that when you were first interviewing Mr. Ogden, in your mind he wasn't free to leave?

A. That's correct.

Q. After you interviewed Mr. Ogden, and you reviewed the statements of the witnesses that you interviewed and the statements of the witnesses the other officer interviewed, did your mind change?

A. No.

[¶ 29] Ogden contends that this testimony did not allow the jury to reach its own conclusion on whether or not the statements were consistent or reliable and that these errors were made more prejudicial because they were emphasized in the State's closing argument. After analyzing the detective's testimony, we conclude that he at no time stated that he believed the young witnesses were credible. He merely testified that the versions of what happened were consistent with one another and that he relied upon the statements in determining that sufficient probable cause existed to arrest Ogden.

[¶ 30] The fact that in its closing argument the State commented on the fact that the detective relied on the witnesses' statements in making his decision to arrest Ogden did not cause unfair prejudice to Ogden. Counsel are given wide latitude in making their closing argument, and we examine closing arguments in their entirety, refusing to consider individual sentences out of context. *Vargas–Rocha v. State*, 891 P.2d 763, 771 (Wyo.1995). The State's comments were simply comments on the evidence. Furthermore, the jury instructions would have remedied any misunderstandings, if any existed, by informing the jury that the criminal charge "is only a formal charge and is not to be considered any evidence of guilt on the part of the defendant."

[¶ 31] We have discerned no violations of any clear and unequivocal rules of law and, accordingly, conclude that none of Ogden's challenges amount to plain error. Finding no plain error, we affirm.

[¶ 32] Affirmed.