2009 WY 117

**Daniel L. SNOW, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–08–0222.**

Supreme Court of Wyoming.

Sept. 23, 2009.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from a felony stalking conviction. That conviction is just one part of the complicated factual and procedural posture of this case. Finding plain error in the district court's response to questions from the jury, we reverse and remand for further proceedings.

## ISSUES

[¶ 2] 1. Did the district court commit plain error in failing to dismiss the stalking charge based upon the appellant's constitutional double jeopardy right?

2. Did the district court commit plain error in declining to instruct the jury on the appellant's proposed lesser-included offense instruction?

3. Did the district court commit plain error in responding to questions submitted by the jury?

4. Did the district court commit plain error by failing to allow the appellant to allocute before being sentenced?

5. Did the district court abuse its discretion or err as a matter of law in ordering the appellant to pay restitution?

## FACTS

[¶ 3] The word "tortured" might be an inadequate adjective to describe the factual and procedural history of this case. It all started soon after the appellant and the victim began dating in 2005. Their rather tumultuous and intermittent relationship led to an incident on May 26, 2006, during which the victim's vehicle and her date's vehicle were both "keyed," with the damages estimated at $3,000.00 per vehicle. This damage was discovered soon after the appellant had accosted the couple and treated them to a torrent of insults, obscenities, and general verbal abuse.

[¶ 4] On June 6, 2006, the victim obtained a protection order against the appellant. One month later, the appellant was charged with two counts of felony property destruction based upon the "keying" incident. One of the conditions of bond in that case was that the appellant have no contact with the victim. As frequently happens in situations such as this one, the existence of the protection order and the bond conditions had little effect upon the conduct of the victim and the appellant, who continued their less-than-peaceful coexistence. Over the ensuing months, several incidents of emotional conflict, verbal combat, and physical confrontation took place, some of which incidents required law enforcement intervention.

[¶ 5] On November 24, 2006, the appellant was charged with one count of felony stalking, in violation of Wyo. Stat. Ann. § 6-2-506(e)(iii) (LexisNexis 2009).[1] The gravamen of the allegation is found in the fourth paragraph of the Information:

4. [On or between the 1st day of November, 2006 and the 24th day of November, 2006] [d]id unlawfully with intent to harass another person, engage in a course of conduct reasonably likely to harass that per-

---

1. Stalking is a misdemeanor unless committed in any of a particular number of ways listed in Wyo. Stat. Ann. § 6-2-506(e), which includes "in violation of any condition of … bail[.]" The words "bail" and "bond" have somewhat different meanings, but are often used interchangeably when referring to the conditions of a criminal defendant's release from custody. *See Black's Law Dictionary* 160, 200 (9th ed.2009). In the instant case, the elements instruction for stalking, given at both trials used the words "bail (bond)."

son and did so in violation of any condition of probation, parole or bail, to wit: did unlawfully with intent to harass [the victim], engage in a course of conduct reasonably likely to harass [the victim] and did so in violation of any condition of probation, parole, or bail, in violation of W.S. § 6-2-506(e)(iii), 2003 Lexis[Nexis], and against the peace and dignity of the State of Wyoming.

[¶ 6] On February 2, 2007, the stalking Information was amended to add as a second count violation of the protection order, in violation of Wyo. Stat. Ann. § 6-4-404 (LexisNexis 2003).[2] This amendment took place in district court, rather than in circuit court. There is no probable cause affidavit attached to the Amended Information, there is in the record no motion to amend, there is no order allowing amendment, there is no indication of a hearing on the matter, there is no indication whether the appellant consented or objected to the amendment, and the Amended Information, itself, contains almost no facts to identify the crime alleged. The only hint is that the crime allegedly occurred on August 23, 2006. At arraignment, defense counsel waived reading of the charges and the appellant pled not guilty to both counts, so we must assume that, at the time, the appellant and his attorney knew what the alleged crime was.[3]

[¶ 7] The Amended Information was then amended on July 6, 2007, this time to change the dates of the allegation in the stalking count to encompass the period from October 26, 2006 through November 24, 2006. As with the first amendment, there is no motion to amend, no order allowing amendment, no probable cause affidavit, no indication of a hearing, and no indication of the appellant's consent, even though this amendment took place after the appellant was bound over to district court and after he was arraigned.

[¶ 8] The stalking charge and the protection order violation charge, but not the separately alleged property destruction charges, were presented to a jury on July 9-10, 2007. The appellant was found guilty of violating the protection order, based upon the victim's testimony that, on August 23, 2006, the appellant had grabbed the steering wheel of her truck and had attempted to put his foot on the gas pedal while the victim was driving, all in the midst of a heated argument during which her thumb and the truck's carpeting were burned by his cigarette, "[h]e sent pop flying everywhere," and he took and destroyed her cell phone.[4] The jury was unable to reach a verdict on the stalking charge, and a mistrial was declared as to that count. On some date not reflected in the record, the appellant was sentenced to 90 days in jail for the protection order violation, and he served that sentence.

[¶ 9] On October 9, 2007, the State filed a motion to join the retrial of the stalking charge with the trial on the two counts of felony property destruction that had been separately filed back on July 17, 2006. We will quote the reasoning set forth in the State's motion because it is relevant to some of the issues presented in this appeal:

> The charge of stalking requires the State to show an ongoing course of conduct by the Defendant intended to harass another person. In the cases at bar the Defendant allegedly vandalized the victim's vehicle as well as the vehicle of her friend in May of 2006, which resulted in two counts of felony property destruction being filed against the Defendant. During the following months the Defendant continued with this course of conduct by violating an order of protection, an offense for which he was convicted at trial, followed the victim, text messaged members of her family, and

---

**2.** Wyo. Stat. Ann. § 6-4-404 (LexisNexis 2003) reads in pertinent part as follows:

(a) Any person who willfully violates a protection order or valid foreign protection order as defined in W.S. 35-21-109(a), is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00); or both.

**3.** W.R.Cr.P. 3(e) sets forth the requirements for the amendment of an information. If those requirements were met in this case, such is not reflected in the record.

**4.** While the victim presented this testimony at trial, the prosecutor emphasized in closing argument that the appellant violated the protection order by having contact with the victim.

came into her house through the doggy-door at approximately 2:00 a.m. As a result the charge of stalking was filed against the Defendant.

[¶ 10] Although there is no order in the record, we presume the motion for joinder was granted because the cases proceeded jointly thereafter. On December 4, 2007, the State filed yet another amended information, this time alleging that the appellant had committed the crime of stalking between the dates of May 27, 2006 through November 24, 2006. On December 7, 2007, a "4th Amended Information" changed the alleged dates to July 14, 2006 through November 24, 2006.[5] These dates—July 14 through November 24—were the dates set forth in the elements instruction when the case went to jury trial on December 10–12, 2007.

[¶ 11] In its case-in-chief during the second trial, the State presented evidence generally of a course of conduct over many months where the appellant threatened, verbally abused, accosted, followed, surveilled, and intimidated the victim. Most such events were not identified by date, time, or place. Specific identified incidents included the following: (1) the May 26, 2006 property damage incident; (2) an August 13, 2006 harassing telephone call; (3) the August 23, 2006 driving incident for which the appellant had been convicted of violating the protection order; (4) a November 12, 2006 harassing telephone call; and (5) the November 24, 2006 incident where the appellant broke into the victim's house through the doggy door.

[¶ 12] The jury returned its verdict on December 12, 2007, finding the appellant guilty of stalking, but not guilty of the two property destruction charges. A presen-

tence investigation was ordered, and on April 18, 2008, the appellant was sentenced to imprisonment for a period of six to ten years, with credit for time served. This appeal followed.

## DISCUSSION

*Did the district court commit plain error in failing to dismiss the stalking charge based upon the appellant's constitutional double jeopardy right?*

[¶ 13] There was no double jeopardy motion or objection below. We do not generally consider issues not raised below. *Belden v. State*, 2003 WY 89, ¶ 55, 73 P.3d 1041, 1090 (Wyo.2003). We have previously held, however, that the issue of double jeopardy is jurisdictional because it involves the power of the State to bring the appellant into court, and it may, therefore, be raised at any time. *Taylor v. State*, 2003 WY 97, ¶ 11, 74 P.3d 1236, 1239 (Wyo.2003); *Kitzke v. State*, 2002 WY 147, ¶ 8, 55 P.3d 696, 699 (Wyo. 2002). In these circumstances, we apply the plain error standard of review. *Lafond v. State*, 2004 WY 51, ¶ 56, 89 P.3d 324, 340–41 (Wyo.2004). "Even when constitutional error is alleged, each criterion must be satisfied or a claim for review under the plain-error doctrine will fail." *Miller v. State*, 904 P.2d 344, 348 (Wyo.1995). To establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him. *Sanchez v. State*, 2006 WY 12, ¶ 19, 126 P.3d 897, 904 (Wyo.2006).[6]

---

5. We are totally perplexed by these seemingly unchallenged amendments to the information. Without a peep from the appellant, the stalking allegation went from covering a 24–day period, to covering a 29–day period, to covering a 181–day period, to covering a 123–day period. The procedures and protections of W.R.Cr.P. 3(e) demand more observance than that, especially where a course of conduct forms the basis of the criminal allegations.

6. We must confess that our jurisprudence is not entirely consistent in considering the question of whether a double jeopardy allegation is non-jurisdictional, and therefore can be waived, or is

jurisdictional, and therefore cannot be waived. *Compare Taylor*, 2003 WY 97, ¶ 11, 74 P.3d at 1239; *Kitzke*, 2002 WY 147, ¶¶ 8–9, 55 P.3d at 699; and *Davila v. State*, 831 P.2d 204, 205–06 (Wyo.1992), with *Taylor v. State*, 612 P.2d 851, 861 (Wyo.1980) and *Hutchins v. State*, 483 P.2d 519, 521 (Wyo.1971). The question has only been raised tangentially in this case by the statement of differing standards of review by the parties. Because the double jeopardy protections "involve the state's power to bring the defendant into court," we will in this case treat double jeopardy as jurisdictional, and will address it even though there was no objection below. *See Kitzke*, 2002 WY 147, ¶ 8, 55 P.3d at

■ [¶ 14] The appellant contends that his right to protection against double jeopardy was violated when he was convicted and punished for the August 23, 2006 protection order violation, and then was convicted and punished for stalking based on a course of conduct that included the same incident. For plain error purposes, the record leaves little doubt that the factual part of this analysis is correct. As set forth above, the State clearly relied upon the August 23, 2006 incident as evidence to support the stalking charge. *See supra* ¶¶ 6–12.

[¶ 15] The appellant's legal arguments are not, however, as simply stated as the above synopsis. First, quoting *Daniel v. State,* 2008 WY 87, ¶ 8, 189 P.3d 859, 862 (Wyo.2008), he contends that the double jeopardy clause prohibits the prosecution of a person for a greater offense after he has been convicted of a lesser-included offense. *See Ohio v. Johnson,* 467 U.S. 493, 501, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984); and *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Next, relying upon *Edge v. Commonwealth,* 451 Mass. 74, 883 N.E.2d 928, 930–32 (2008), he argues that violation of a protection order is a lesser-included offense of felony stalking. Finally, while nominally paying homage to the statutory elements test found in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), he asks this Court to go beyond that test in analyzing both the lesser-included offense issue and the double jeopardy issue, and to consider the underlying facts and evidence used to prove the separate offenses. In this regard, he cites *Bilderback v. State,* 13 P.3d 249, 254–55 (Wyo.2000), where this Court held that the separate crimes of attempted second-degree murder and using a firearm to commit a felony merged for sentencing purposes where the appellant "did not commit any other act which could have constituted attempted second-degree murder other than

using the firearm." Finally, he argues that only one prosecution is permissible for a continuing offense, and that acquittal or conviction for an offense that consists of a series of acts extending over a period of time bars prosecution for other acts during that period of time. *See In re Snow,* 120 U.S. 274, 285, 7 S.Ct. 556, 561, 30 L.Ed. 658 (1887); and *Commonwealth v. Robinson,* 126 Mass. 259, 261–62 (1878).

[¶ 16] The State begins its analysis of this issue by noting our holding in *Meyers v. State,* 2005 WY 163, ¶ 8, 124 P.3d 710, 714 (Wyo.2005), that the double jeopardy protections of the U.S. Constitution and the Wyoming Constitution "have the same meaning and are coextensive in application." Next, the State agrees with the appellant that *Daniel v. State,* 2008 WY 87, ¶ 8, 189 P.3d 859, 862 (Wyo.2008), holds that the double jeopardy clause prohibits the prosecution of a defendant for a greater offense after that defendant has been convicted of a lesser-included offense. Applying the statutory elements test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), however, the State concludes that the crime of violating a protection order is clearly not a lesser-included offense of the crime of felony stalking. Finally, the State contends that the double jeopardy doctrine is not violated in this case because the two charges were originally tried together, and the retrial of the stalking charge was only necessitated by the jury deadlock on that issue. *See Meyers,* 2005 WY 163, ¶ 10, 124 P.3d at 714.

■ [¶ 17] We note first that the State is correct in its assertion that the December 2007 felony stalking retrial was not a "subsequent proceeding," but was a continuation of the earlier proceeding. As just recently restated by the United States Supreme Court, "the failure of the jury to reach a verdict . . .

699; *see also Martin v. Commonwealth,* 170 S.W.3d 374, 377 (Ky.2005); *United States v. Broce,* 488 U.S. 563, 568–76, 109 S.Ct. 757, 762–66, 102 L.Ed.2d 927 (1989); *Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974). The issue deserves further study. In

that regard, it would be helpful to address the issue as one of forfeiture, rather than one of waiver, where it arises out of a failure to object below, rather than out of the entry of a guilty plea. *See United States v. Olano,* 507 U.S. 725, 730–38, 113 S.Ct. 1770, 1775–80, 123 L.Ed.2d 508 (1993).

is not an event which terminates jeopardy." *Yeager v. United States*, —— U.S. ——, ——, 129 S.Ct. 2360, 2369, 174 L.Ed.2d 78 (2009) (quoting *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984)). The second trial does not put the defendant in jeopardy twice; instead, it simply follows the declaration of a mistrial and continuation of the initial jeopardy. *Yeager*, —— U.S. at ——, 129 S.Ct. at 2366; *see also Meyers*, 2005 WY 163, ¶ 10, 124 P.3d at 714 (retrial after hung jury does not violate double jeopardy). What that leaves us with is the question of whether there is any reason the appellant could not initially have been charged with both violation of the protection order and felony stalking, and the question of whether, once the appellant was convicted of both, the crimes merged for purposes of sentencing. If double jeopardy was violated in this case, it had to have been in the sense of multiple punishments, rather than in the sense of subsequent prosecutions.

■■■ [¶ 18] The State is also correct that the crime of violation of a protection order as defined by Wyo. Stat. Ann. § 6–4–404 is not a lesser-included offense of the crime of stalking as defined by Wyo. Stat. Ann. § 6–2–506(b).[7] The elements of the former simply are not a subset of the elements of the latter. *See Javorina v. State*, 2008 WY 35, ¶ 5, 180 P.3d 205, 207 (Wyo. 2008); and *Heywood v. State*, 2007 WY 149, ¶ 10, 170 P.3d 1227, 1230 (Wyo.2007). The state was entitled to charge both crimes and to have both presented to a jury. *Meyers*, 2005 WY 163, ¶ 10, 124 P.3d at 714. Furthermore, "the fact that a continuing course of conduct engendered several charges creates no impediment to multiple convictions and sentences." *Rouse v. State*, 966 P.2d

967, 970 (Wyo.1998). Stalking is a course-of-conduct crime based on harassment, the definition of which includes several criminal acts, such as vandalism and battery. Surely, the legislature did not intend for a stalker to be immune from punishment for his or her criminal course of conduct on the ground that he or she has been or was also being punished for an underlying criminal act that is not, under the statutory elements test, a lesser-included offense.

If we were to accept Daker's argument, then it would be impossible for the State to prosecute repeat offenders of the stalking statute as, having once used the evidence to demonstrate a course of conduct, the State would be forever barred from using that evidence again in establishing a subsequent stalking violation. As stalking is, by its very nature, a cumulative crime, Daker's interpretation of double jeopardy would eviscerate the purpose of the stalking statute, leaving would-be stalkers free to begin stalking their victim with a clean slate following a stalking conviction. We cannot believe the legislature intended such result.

*Daker v. State*, 248 Ga.App. 657, 548 S.E.2d 354, 356–57 (2001). It would seem that this rationale would apply whether the conviction for the first incident of stalking-type conduct was for stalking, itself, or was for another crime, such as assault or violation of a protection order.

[¶ 19] We conclude that the fact that the appellant was punished for violating a protection order did not prohibit his also being punished for felony stalking, despite the fact that the conduct upon which the protection order violation was based became part of the conduct upon which the felony stalking conviction was based. The thesis underlying

7. Wyo. Stat. Ann. § 6–4–404 is set forth at fn. 2, *supra at* 508. Wyo. Stat. Ann. § 6–2–506(b) provides as follows:

   (b) Unless otherwise provided by law, a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:
   (i) Communicating, anonymously or otherwise, or causing a communication with anoth-

er person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;
   (ii) Following a person, other than within the residence of the defendant;
   (iii) Placing a person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant; or
   (iv) Otherwise engaging in a course of conduct that harasses another person.

*Bilderback* and similar cases does not prohibit multiple punishments where the first offense being punished is only one of a series of acts that constitute the second offense.[8]

### Did the district court commit plain error in declining to instruct the jury on the appellant's proposed lesser-included offense instruction?

[¶ 20] Near the end of the second trial, the district court asked counsel if either of them objected to the proposed jury instructions. Both replied in the negative. Defense counsel then asked the court to instruct the jury that criminal entry is a lesser-included offense of stalking, based on the doggy door incident.[9] The State objected, relying on *Blockburger*. The district court agreed with the State, commenting that "[i]t's simply an offense that may have been committed in the course of this course of conduct. That's separate and uncharged, so . . . ."

[¶ 21] The record contains no copy of a written instruction, and no indication that a written instruction was offered. Furthermore, defense counsel did not object when the district court declined to give the instruction. Thus, the issue has not been preserved for appeal except insofar as plain error can be shown. *Landsiedel v. Buffalo Props., LLC*, 2005 WY 61, ¶ 12, 112 P.3d 610,

614 (Wyo.2005); *Muniz v. State*, 783 P.2d 141, 142 (Wyo.1989); *Sybert v. State*, 724 P.2d 463, 466 (Wyo.1986).[10] The test for plain error was set out earlier herein and will not be repeated. *See supra* ¶ 13. Suffice it to say that the district court did not violate any rule of law in declining to give a lesser-included offense instruction. The elements of the crime of criminal entry simply are not a subset of the elements of felony stalking. We continue to follow the statutory elements test of *Blockburger*, and so long as we do so, we need not dive into the rougher waters where conduct and evidence become issues in evaluating what is, and what is not, a lesser-included offense.

### Did the district court commit plain error in responding to questions submitted by the jury?

[¶ 22] During deliberations, the jury sent a note to the judge asking the following questions:

Question:

Whether or not you can tell us—does the stalking charge stem from the violations of the protection orders or from actions of following her, etc.

When was Daniel Snow actually cited for the stalking charge?

---

8. Indirectly raised, but not fully developed in this appeal, is the question of whether cases such as *Bilderback; Owen v. State*, 902 P.2d 190 (Wyo. 1995); and *Rivera v. State*, 840 P.2d 933 (Wyo. 1992), are consistent with cases such as *Rouse; State v. Keffer*, 860 P.2d 1118 (Wyo.1993); and *Duffy v. State*, 789 P.2d 821 (Wyo.1990), and in particular, with *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The question is whether sentencing merger should be limited to instances where the crimes are greater and lesser-included offenses. *See Commonwealth v. Shank*, 2005 Pa. Super. 317, 883 A.2d 658, 670 (2005) and *Commonwealth v. Gatling*, 570 Pa. 34, 807 A.2d 890, 899 (2002); *but compare State v. Steele*, 33 Or.App. 491, 577 P.2d 524, 528 (1978). *See also* Bruce A. Antkowiak, *Picking Up the Pieces of the Gordian Knot: Towards a Sensible Merger Methodology*, 41 New Eng. L.Rev. 259 (2007); Anne Bowen Poulin, *Double Jeopardy and Multiple Punishment: Cutting the Gordian Knot*, 77 U. Colo. L.Rev. 595 (2006); and Kathryn A. Pamenter, *United States v. Dixon: The Supreme Court Returns to the Traditional Standard for Double Jeopardy Clause Analysis*, 69 Notre Dame L.Rev. 575 (1994).

9. Wyo. Stat. Ann. § 6–3–302(a) (LexisNexis 2009) provides as follows:

   (a) A person is guilty of criminal entry if, without authority, he knowingly enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures.

10. Both sides cite *Thomas v. State*, 2003 WY 53, ¶¶ 10–15, 67 P.3d 1199, 1202–03 (Wyo.2003), for the proposition that the *de novo* standard of review applies where a party has offered an instruction that has been denied, whether or not that party objects to the denial. It is true that in *Thomas* we concluded that three separate discussions between the court and counsel was sufficient to preserve the issue. *Id.* At the same time, we noted the preference for presentation of proposed instructions in writing and the preference for objecting to the denial of an offered instruction. *Id.* In the instant case, there is little distinction between *de novo* review and plain error review because the lesser-included offense question presented here is a purely legal one.

[¶ 23] With the agreement of counsel, the court responded to the questions as follows:

### INSTRUCTION NO. ____

The charge of stalking, as the instructions indicate, alleges a "course of conduct" over the time stated, July 14 to November 24, 2006. The following: violation of protection order, telephone calls and other incidents—the state alleges, all together amount to the "course of conduct" that constitutes, if you believe they did occur, the ~~offense~~ charge of stalking. Keep in mind that the violation of the protective order is not a charge in this case and you should consider it only to the extent, if any, that you decide that the conduct which may have violated the protective order *together with all of the other incidents* combine to constitute the required course of conduct. Remember that the state carries the burden to prove beyond a reasonable doubt that these incidents did occur and that they do amount to the required course of conduct to constitute stalking under the definitions given in the instructions. When Mr. Snow was cited for the stalking is not material to your deliberations.

(Emphasis in original).

[¶ 24] In support of its contention that the district court committed reversible error by the way in which it responded to the jury's questions, the appellant cites *United States v. Duran*, 133 F.3d 1324, 1334 (10th Cir.1998) and *Proffit v. State*, 2008 WY 114, ¶ 44, 193 P.3d 228, 244 (Wyo.2008), for the proposition that it is the court's duty to clear up jury confusion about the instructions or applicable law. The appellant then concedes that, given his failure to object below, this Court's review should be for plain error. Substantively, the appellant argues that the response to the jury's questions constituted prejudicial error because the judge itemized for the jury those portions of the evidence that the judge believed could support the stalking charge.

[¶ 25] In response, the State presents three separate standards of review. First, the State cites *Luedtke v. State*, 2005 WY 98, ¶ 28, 117 P.3d 1227, 1232 (Wyo.2005), for its holding that this Court reviews jury instructions under an abuse of discretion standard. Next, the State cites *Leyva v. State*, 2005 WY 22, ¶ 9, 106 P.3d 873, 876 (Wyo.2005), as requiring plain error analysis due to the lack of an objection below. Finally, the State quotes *Martin v. State*, 2007 WY 76, ¶ 34, 157 P.3d 923, 930–31 (Wyo.2007), where, in a case involving the failure to object to a limiting instruction, we said: "Furthermore, the doctrine of invited error prohibits a party from raising error on appeal that was induced by the party's own actions." Then, without citation to any authority, the State contends that it was appropriate for the district court to clarify for the jury what facts were alleged to have constituted stalking. The State's interesting conclusion is that "[b]ecause Appellant has failed to meet his burden under the plain error standard, the district court cannot be said to have abused its discretion when responding to the jury's questions."

[¶ 26] We agree that *Martin* says what the State says it says. But *Martin* goes on, in the same paragraph, to say that "there will be no grounds for reversal *unless the instruction was prejudicial.*" *Id.* (emphasis added). Similarly, in *Leyva*, 2005 WY 22, ¶ 9, 106 P.3d at 876, we held that, where a defendant fails to object to an instruction, our review is for plain error, which, of course, involves a search for prejudice. Even where a defendant has not only not objected, but has actually offered the offending instruction, the invited error doctrine allows for review where the instruction is "necessarily prejudicial." *Bromley v. State*, 2007 WY 20, ¶ 35, 150 P.3d 1202, 1213 (Wyo. 2007). These cases reflect the confluence of W.R.Cr.P. 30(a), which states in part that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection[,]" and W.R.Cr.P. 52(b), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We have followed this rule for a long time. *See, e.g., Justice v. State*, 775 P.2d

1002, 1009 (Wyo.1989); *Cutbirth v. State*, 663 P.2d 888, 891 (Wyo.1983); and *Britton v. State*, 643 P.2d 935, 937 (Wyo.1982).

[¶ 27] Plain error analysis begins with the question of whether the record clearly reflects the alleged error. Somewhat hesitantly, we answer that question in the affirmative. We hesitate because, while there is a piece of paper in the exhibits folder that appears to be the jury question, it bears no identification other than "Snow trial 12–12–07." It bears no signature and no indication of having been received from the jury by the judge. But it looks like a jury question, and the parties have treated it as such, so we will, too. There is also in the record a transcript of a brief discussion in chambers where the court and counsel discussed the court's receipt of a question from the jury, and its proposed response. Neither the substance of the question nor the substance of the response are mentioned. Finally, although the original response appears nowhere in the record, the parties agree that a copy attached to the appellant's brief as an exhibit is a copy of the response.[11]

[¶ 28] The second question is whether a clear and unequivocal rule of law exists in relation to the issue at hand. Here, that rule of law is, indeed, clear and unequivocal: criminal defendants are entitled to a jury trial with the jury as the sole fact-finder. U.S. Const. amend. VI; Wyo. Const. art. 1, § 9 ("The right of trial by jury shall remain inviolate in criminal cases"); W.R.Cr.P. 23(a) ("Cases required to be tried by jury shall be so tried . . ."); *Garay v. State*, 2007 WY 130, ¶ 2, 165 P.3d 99, 100 (Wyo.2007) (jury as factfinder resolves conflicts in the evidence); *Leyo v. State*, 2005 WY 92, ¶ 11, 116 P.3d 1113, 1116–17 (Wyo.2005) (Supreme Court must preserve the jury's role as fact-finder); *Ogden v. State*, 2001 WY 109, ¶ 21, 34 P.3d 271, 276 (Wyo.2001) (jury's function to resolve factual issues); *Walston v. State*, 954 P.2d 987, 988 (Wyo.1998) (role of jury as factfinder to evaluate evidence); 47 Am.Jur.2d *Jury* §§ 15–16 (2006) (province of jury to determine controverted issues of fact).

[¶ 29] The sanctity of the jury's role as fact-finder has always been honored in this State. In *Taylor v. State*, 612 P.2d 851, 854–55 (Wyo.1980), we recognized the significance of the right by quoting 3 W. Blackstone, Commentaries, 379 as follows:

> "Upon these accounts the trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English law . . . [I]t is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals. . . ."

[¶ 30] In a case published just a month after *Taylor*, we reiterated our view of the significance of the jury trial:

> The aim of the guarantee of the right to trial by jury is to preserve the substance of the right of trial by jury as distinguished from mere matters of form or procedure, particularly to retain the concept that issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court. . . . The essential elements of a trial by jury are that there be impartial jurors, who unanimously decide the facts in controversy under the direction of a judge.

*Lapp v. City of Worland*, 612 P.2d 868, 873 (Wyo.1980) (internal citations omitted).

[¶ 31] It is within this context that we must decide whether the district court in the case *sub judice* usurped the fact-finding role of the jury by identifying for it the evidence that the State contended amounted to the course of conduct underlying the stalking charge. The parties have not directed us to any cases specifically on point, but we believe the following excerpts from the concurring opinion of Circuit Judge Tatel in *United States v. Ayeni*, 374 F.3d 1313, 1317, 1319–21 (D.C.Cir.2004), provide useful guidance:

> "It goes without saying that few institutions are as venerable as that of trial by jury, enshrined at the Founding in the Bill of Rights and hallowed by an enormous

11. Were the procedural dictates of Wyo. Stat. Ann. § 1–11–209 (LexisNexis 2009) followed, it is likely that this information would be available in the record.

body of English and American law that commands judges ... not to invade the province of judgment by the people." *Stacey v. Allied Stores Corp.*, 768 F.2d 402, 406 (D.C.Cir.1985)....

. . . .

Two bedrock characteristics of our system of trial by jury, a system the Supreme Court has labeled "fundamental to the American scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968), are that jury deliberations occur in seclusion and that the jury serves as the sole finder of fact. Regarding the first characteristic, not only is "the sanctity of jury deliberations ... a basic tenet of our system of criminal justice," *United States v. Schwarz*, 283 F.3d 76, 97 (2d Cir.2002), but courts go to great lengths to protect that sanctity....

. . . .

No less fundamental than jury seclusion is the principle that the jury—not the trial judge and not the attorneys—serves as the trier of fact. As the Supreme Court has said:

> Of course, ... in a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) (citations omitted). This court has also emphasized the importance of the jury as fact-finder. Indeed, "our opinions have repeatedly emphasized our conviction that the jury's role as fact-finder is ... central to our jurisprudence." *United States v. Comer*, 421 F.2d 1149, 1154 (D.C.Cir.1970); *see also Belton v. United States*, 382 F.2d 150, 156 (D.C.Cir. 1967) ("[T]he principle that the jury should be permitted to find the facts is a cornerstone of our jurisprudence...."). Underscoring the importance of that role, this court, sitting en banc, has declared that "[a]ny undue intrusion by the trial judge into this exclusive province of the jury is error of the first magnitude." *United States v. Thomas*, 449 F.2d 1177, 1181 (D.C.Cir.1971) (en banc).

... Of course, no one told the jury which facts to find, but the jury's role as factfinder can be invaded without being completely usurped....

... Juries' legal questions, which are what usually prompt supplemental instructions, differ fundamentally from their factual questions for an obvious reason: juries do not serve as the "triers of law." They are not expected to divine the law for themselves the way they are expected to find the facts. Rather, the trial judge, aided by counsel, provides the jury with the proper legal standard. *See, e.g., Kelly v. South Carolina*, 534 U.S. 246, 256, 122 S.Ct. 726, 733, 151 L.Ed.2d 670 (2002) ("A trial judge's duty is to give instructions sufficient to explain the law...."). Indeed, "[w]hen a jury makes explicit its [legal] difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

By contrast, where a jury's questions relate to a factual matter, a substantive reply (whether by the judge or the attorneys) risks interfering with the jury's exclusive responsibility for resolving factual questions. For this reason, several circuits have upheld district courts that refused to answer juries' factual questions. In one case, for example, the district court told jurors who submitted factual questions, "[m]embers of the jury: The Court cannot answer your questions. It is for you as fact finders to interpret the evidence, weigh it and evaluate it without further directions from the Court. Please proceed with your deliberations." *United*

*States v. Aubin,* 961 F.2d 980, 983 (1st Cir.1992) (quoting the district court) (internal quotation marks omitted). Sustaining the district court's actions, the First Circuit explained that "[t]he jury questions sought to resolve a conflict among the jurors as to what the testimony had been; such a conflict must be resolved by the trier of fact." *Id.; see also United States v. Blumberg,* 961 F.2d 787, 790 (8th Cir. 1992) (finding no abuse of discretion where the district court, having received a factual question from the jury and "[b]elieving further instruction would invade the province of the jury as the ultimate fact finder, . . . told the jurors they should answer the question for themselves by examining the evidence"). Courts have also warned trial judges against usurping the jury's fact-finding role even as they carry out their obligation to clear up the jury's legal difficulties. For instance, after explaining the importance of answering a jury's legal questions, the Fourth Circuit cautioned that " 'the court must be careful not to invade the jury's province as fact finder.' Such a distinction is consistent with our fundamental belief that it is the court that provides the legal yardstick and the jury that measures the evidence." *United States v. Ellis,* 121 F.3d 908, 925 (4th Cir.1997) (quoting *Blumberg,* 961 F.2d at 790) (citation omitted); *see also United States v. Nunez,* 889 F.2d 1564, 1569 (6th Cir.1989) ("Questions from a deliberating jury present a dilemma for a trial court. The court must be careful not to invade the jury's province as fact-finder. Nevertheless, the court must respond to questions concerning important legal issues."); *United States v. Walker,* 575 F.2d 209, 214 (9th Cir.1978) (Kennedy, J.) ("Because the jury may not enlist the court as its partner in the fact-finding process, the trial judge

must proceed circumspectly in responding to inquiries from the jury.").

[¶ 32] Because we so revere the fact-finding role of the jury in America's and Wyoming's legal system, we are anxious to defend and protect that right with utmost care and attention. In the instant case, the principles just enunciated require us to recognize that the district court's response to the first jury question was not a response to a question of law. Rather, the response directed the jury to particular evidence that the jury should, or at least could, consider. The response went too far because, using the oft-repeated phrase, it "invaded the province of the jury." Once a jury begins to deliberate, its deliberations are guided by the evidence presented in open court, the arguments of counsel, and the legal instructions presented by the court. If the State has presented the evidence in such a fashion, or has argued in such a fashion, as to leave doubt as to what evidence is meant to prove what crime, it is not appropriate for the court to correct that deficiency.

[¶ 33] This case is nothing like *Heywood v. State,* 2007 WY 149, ¶ 30, 170 P.3d 1227, 1235 (Wyo.2007), where we reversed because the district court failed to provide a substantive answer to a jury question. The jury there did not ask what evidence should be considered in regard to each crime charged, but asked which crime it was to deliberate upon under each count. *Id.* at ¶ 25, 170 P.3d at 1234. The failure in *Heywood* was a legal one; the verdict form was inadequate. In the instant case, the given instructions and the verdict form were appropriate. It should have been left at that.[12]

▮▮▮▮ [¶ 34] The final prong of the plain error test is the determination of whether the appellant was prejudiced by the error. "To establish prejudice, the appellant

---

12. The parties have not analyzed for us the legislative intent of Wyo. Stat. Ann. § 1–11–209 (LexisNexis 2009), which provides as follows:

After the jurors have retired for deliberation, *if there is a disagreement between them as to any part of the testimony,* or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. *The court*

*may give its recollection as to the testimony on the points in dispute,* in the presence of or after notice to the parties or their counsel. (Emphasis added). We are not inclined to construe this statute on our own initiative, and we do not need to do so to answer the question presented in this case. Whatever the legislative intent may have been, it cannot have been contrary to the constitutional principles outlined above.

must show a reasonable probability that she would have received a more favorable verdict in the absence of the error." *Pendleton v. State,* 2008 WY 36, ¶ 11, 180 P.3d 212, 216 (Wyo.2008). We have also said that, to show prejudice, an appellant must show "circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play." *Teniente v. State,* 2007 WY 165, ¶ 11, 169 P.3d 512, 520 (Wyo. 2007); *see also Orona–Rangal v. State,* 2002 WY 134, ¶ 16, 53 P.3d 1080, 1085 (Wyo.2002). In other cases, we have characterized prejudice as conduct which "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Duke v. State,* 2004 WY 120, ¶ 36, 99 P.3d 928, 943 (Wyo.2004) (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *see also Page v. State,* 2003 WY 23, ¶ 8, 63 P.3d 904, 908–09 (Wyo.2003). In other words, focusing solely on an outcome determination is insufficient; the Court must also look at "whether the result of the proceeding was fundamentally unfair or unreliable." *Allen v. State,* 2002 WY 48, ¶ 35, 43 P.3d 551, 563 (Wyo.2002). Perhaps the ultimate question is whether the appellant was denied his right to a fair trial. *Teniente,* 2007 WY 165, ¶ 12, 169 P.3d at 521.

[¶ 35] We cannot find the district court's error in this case to be harmless. The appellant had a constitutional right to have the facts of the case determined solely by the jury. The court's intrusion into that role denied the defendant that fundamental protection. Two circumstances support this conclusion. First, one jury had already failed to convict the appellant of stalking based upon the same evidence. Second, this jury indicated by its question that it was unsure of what facts made up the course of conduct necessary to find the appellant guilty of stalking. There is a reasonable probability that, without the judge's inappropriate evidentiary guidance, the jury would not have reached the verdict that it did.

## CONCLUSION

[¶ 36] The appellant's constitutional right against double jeopardy was not violated by the district court's failure to dismiss the stalking charge. The retrial after a mistrial did not invoke subsequent jeopardy, and the appellant was not punished twice for the same offense, inasmuch as the crime of violation of a protection order is not a lesser-included offense of the crime of stalking. Neither, for the same reason, did the district court commit plain error in refusing to instruct the jury that criminal entry is a lesser-included offense of stalking. The district court committed plain error, however, by guiding the jury toward particular evidence during the jury's deliberations. For that reason, the judgment and sentence must be reversed, and the case remanded to the district court for further proceedings.

[¶ 37] Resolution of the appeal in this manner makes the fourth and fifth stated issues moot, and we therefore decline to address them. The same is true of the second part of the jury question issue.

BURKE, Justice, dissenting.

[¶ 38] I respectfully dissent. The district court correctly provided a substantive response to the jury questions as mandated by our decision in *Heywood,* 170 P.3d 1227. That substantive response did not "invade the province of the jury." There was no plain error and the conviction should be affirmed.

[¶ 39] In order to establish plain error, an appellant must demonstrate the violation of a clear and unequivocal rule of law. The rule of law that governs this case was announced and applied in *Heywood.* That rule of law was not violated here.

[¶ 40] In *Heywood,* this Court reversed the defendant's convictions on three counts of second degree sexual assault because the district court did not provide a substantive response to a jury question. In *Heywood,* the jury presented this question:

Are the three counts—

1. In the shed?

2. Use of the sex toys?

3. When removing the splinter?

*Id.,* ¶ 18, 170 P.3d at 1232. The court provided this response:

The Court is unable to further instruct on this. You must rely on your recollection of the evidence and argument and consider the Instructions.

*Id.,* ¶ 19, 170 P.3d at 1232. We found that answer inadequate and reversed Mr. Heywood's conviction. We explained:

The jury must be adequately instructed to allow it to apply the law to the facts.

. . .

This jury question, if that is what it was, facially reflects the jury's confusion. Instruction No. 3 informed the jury that "[e]ach count is a separate charge, and the proof as to each must stand on its own, so you must separately consider and determine what the evidence shows as to each count." It is easy to surmise that, as the jury began its deliberations, it had no idea what the allegation in count I (or count II or count III) was, and therefore asked the judge for guidance. The judge's answer-"I can't tell you"-was inadequate. Wyo. Stat. Ann. §§ 1–11–209 and 7–11–204 (Lexis-Nexis 2007) clearly permit the judge further to instruct the jury after deliberations have begun when a question arises as to the evidence or the law, and in numerous cases over the years we have addressed the exercise of that discretion. *See, e.g., Carlson v. Carlson,* 888 P.2d 210, 214–15 (Wyo.1995); *In re CH,* 783 P.2d 155, 158 (Wyo.1989); *Johnston v. State,* 747 P.2d 1132, 1133–35 (Wyo.1987); *Hoskins v. State,* 552 P.2d 342, 349 (Wyo.1976). Beyond the power to answer such questions is the duty to answer such questions: A number of courts have held that if the original instructions are incomplete or if the jury, or any of the individual jurors, express confusion or lack of understanding of a significant element of applicable law, it is the court's duty to give additional instructions. The refusal of a jury's request for an instruction may constitute reversible error. 75A Am.Jur.2d *Trial* § 944 (2007). The foregoing principles of law can be summarized for present purposes as follows: (1) instructions that leave doubt as to the circumstances under which the crime was committed are insufficient; (2) instructions that confuse or mislead the jury are insufficient; (3) jury questions revealing confusion or a lack of understanding should be answered.

*Id.,* ¶¶ 26, 27, 28, 29, 170 P.3d at 1234–35 (footnote omitted).

[¶ 41] We concluded the opinion with this statement: "Reversible error occurred . . . when the district court failed . . . to provide the jury with a substantive response to its question concerning the charged offenses, because the question reflected obvious and understandable confusion as to how to apply the law to the facts." *Id.,* ¶ 33, 170 P.3d at 1236.

[¶ 42] When our holding in *Heywood* is applied to this case it is difficult to find a violation of a clear and unequivocal rule of law. The jury question "facially reflects the jury's confusion." Our holding in *Heywood* requires that such a question be answered. In *Heywood,* we did not discuss the subtle distinctions that may exist between questions of law and questions of fact or indicate that those distinctions may be significant, as the majority opinion now holds. We did not say that jury questions must be answered substantively only if the answer to the question is a "response to a question of law." To the contrary, we unequivocally stated that "jury questions revealing confusion or a lack of understanding should be answered." *Id.,* ¶ 29, 170 P.3d at 1235. In *Heywood,* we explicitly stated that a judge is permitted to answer jury questions "as to the evidence or the law." *Id.,* ¶ 27, 170 P.3d at 1235.

[¶ 43] If the trial judge was not permitted to provide a substantive response to the jury question, one wonders what would have been the appropriate response. Clearly, the question should not have been ignored. The district court's response to the jury question in *Heywood* appears to be the type of response that the majority is stating should have been provided here: "The Court is unable to further instruct on this. You must rely on your recollection of the evidence and argument and consider the Instructions." *Id.,* ¶ 19, 170 P.3d at 1232. The problem, of course, for this trial judge, (who coincidentally was the trial judge who was reversed in *Heywood*) and other trial judges forced to deal on a time-sensitive basis with jury questions, is

that we specifically rejected that response in *Heywood.* The result we reach in this case simply cannot be squared with our decision in *Heywood* and provides no meaningful guidance to trial judges who will be confronted in the future with questions from the jury.

[¶ 44] Certainly, if a trial court provides a substantive response to a jury question, that response cannot invade the province of the jury. The response provided here did not do that. The response mentioned only "other incidents" and two specific types of conduct: "violation of protection order" and "telephone calls." It was reasonable for the trial court to reference violation of the protection order in its response, because the jury question made specific reference to that item. I also see no harm in the district court's limited reference to the "telephone calls." "Telephonic" communications were referenced in one of the other jury instructions. Most significantly, however, the court throughout the instruction made it clear that it was the function of the jury to determine if any of those incidents had occurred. The district court reminded the jurors of the State's burden of proof and referenced other jury instructions applicable to the case. There were only 11 jury instructions given in this case. Instruction 1 specifically advised the jury of their role as fact finder. It stated in pertinent part:

The role of the jury is different from that of the judge. Your function and purpose is to determine the facts. That job is exclusively that of the jury. I will not intentionally intrude upon your prerogatives as fact finders. So, if at any time I make a comment regarding the facts or otherwise indicate, directly or indirectly, how I might view the facts it will be unintentional and you may totally disregard my acts or comments.

I find nothing in the record or the instruction to indicate that the trial judge usurped the function of the jury or that Mr. Snow was prejudiced in any manner by the response to the question, a response, it should be emphasized, that was agreed to by Mr. Snow.

[¶ 45] In conclusion, Mr. Snow has failed to demonstrate that the district court violated a clear and unequivocal rule of law by providing a substantive response to the jury question. Such a response was clearly and unequivocally required by our decision in *Heywood.* The substantive response did not invade the province of the jury, and Mr. Snow has failed to establish prejudice. There was no plain error.